**Garrison S. JOHNSON, Petitioner–Appellant,**

v.

**STATE OF CALIFORNIA; James H. Gomez, Director, Department of Corrections; James Rowland, Respondents–Appellees.**

**No. 98–55302.**

United States Court of Appeals, Ninth Circuit.

Submitted Oct. 8, 1999.[1]

Filed March 21, 2000.

---

1. The panel unanimously finds this case suitable for decision without oral argument. *See*

Fed. R.App. P. 34(a); 9th Cir. R. 34–4.

Garrison S. Johnson, Lancaster, California, in pro se, for the petitioner-appellant.

B Sara Turner, Deputy Attorney General, San Francisco, California, Barbara C. Spiegel, San Diego, California, for the respondents-appellees James H. Gomez and James Rowland.

Before: FLETCHER, D.W. NELSON, and BRUNETTI, Circuit Judges.

PER CURIAM.

Appellant, Garrison Johnson, is a prisoner incarcerated in the State of California. He filed the instant suit claiming that the California Department of Corrections ("CDC") violated his constitutional rights by segregating inmates according to race and extorting money from inmates by overcharging for telephone use. This is an appeal from the district court's order granting the State's motion to dismiss on grounds that the action is time-barred and otherwise fails to state a claim.

## I. FACTS AND PROCEDURAL HISTORY

Garrison Johnson filed the instant suit pro se, asserting causes of action under 42 U.S.C. §§ 1981, 1983, 1985, and 1986. Johnson's primary allegations are (1) that between 1987 and 1991, the former Director of the Department of Corrections, James Rowland, instituted and enforced a policy of housing inmates according to race, and (2) that warden Rowland was engaged in a conspiracy to extort money from inmates through charges for telephone calls. The same allegations are made against the current Director, James Gomez, for the period covering 1991 to the present. Johnson contends that these actions violated his right to due process under the Fifth Amendment, his right to be free from cruel and unusual punishment under the Eighth Amendment, and his right to due process and equal protection of the laws under the Fourteenth Amendment. He seeks damages and declaratory relief.

Johnson filed his original complaint on February 24, 1995. After a series of amendments in response to motions to dismiss, Johnson filed a Third Amended Complaint. The State again moved to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure and the district court adopted a report and recommendation from the magistrate judge dismissing the case with prejudice. We have jurisdiction pursuant to 28 U.S.C. § 1291. We reverse in part and affirm in part.

## II. STANDARD OF REVIEW

■ Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure is reviewed de novo. See Steckman v. Hart Brewing, Inc., 143 F.3d 1293, 1295 (9th Cir.1998). All factual allegations of the complaint are accepted as true and all reasonable inferences must be drawn in favor of the nonmoving party. See id.; Usher v. City of Los Angeles, 828 F.2d 556,

561 (9th Cir.1987). Moreover, "[t]he Supreme Court has instructed the federal courts to liberally construe the 'inartful pleading' of pro se litigants," Eldridge v. Block, 832 F.2d 1132, 1137 (9th Cir.1987) (citing Boag v. MacDougall, 454 U.S. 364, 365, 102 S.Ct. 700, 70 L.Ed.2d 551 (1982)), and we have emphasized that the rule of liberal construction is "particularly important in civil rights cases." Ferdik v. Bonzelet, 963 F.2d 1258, 1261 (9th Cir.1992) (citing Eldridge, 832 F.2d at 1137).

■ Dismissal on statute of limitations grounds is a question of law reviewed de novo. See Hernandez v. City of El Monte, 138 F.3d 393, 398 (9th Cir.1998).

## III. DISCUSSION

### A. Statute of Limitations

■ Because § 1983 does not contain a statute of limitations, federal courts apply the forum state's statute of limitations for personal injury claims. See Wilson v. Garcia, 471 U.S. 261, 276, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). In California, the applicable statute of limitations is one year. See Elliott v. City of Union City, 25 F.3d 800, 802 (9th Cir.1994); Cal.Civ.Proc. Code § 340(3).[2]

■ When not inconsistent with federal law, we also apply the law of the forum state regarding tolling. See Hardin v. Straub, 490 U.S. 536, 537–39, 543, 109 S.Ct. 1998, 104 L.Ed.2d 582 (1989); Bacon v. City of Los Angeles, 843 F.2d 372, 374 (9th Cir.1988). However, federal law controls the question of when a claim accrues. See Elliott, 25 F.3d at 801–02. Under federal law, a claim accrues when the plaintiff knows, or should know, of the injury which is the basis of the cause of action. See Kimes v. Stone, 84 F.3d 1121, 1128 (9th Cir.1996).

**2.** A one year statute of limitations also applies to actions under 42 U.S.C. §§ 1981, 1985 and 1986. See Taylor v. Regents of the Univ. of California, 993 F.2d 710, 711–12 (9th Cir. 1993); McDougal v. County of Imperial, 942 F.2d 668, 673–74 (9th Cir.1991).

Prior to the enactment of § 352.1(a) of the California Code of Civil Procedure on January 1, 1995, prisoners serving less than a life sentence could toll claims for their entire sentence. *See Elliott*, 25 F.3d at 802. Under § 352.1(a), however, the tolling period is limited to two years. The report and recommendation ("R & R") of the magistrate judge held that all claims in the complaint against former warden Rowland are time-barred. He reasoned that Johnson's causes of action accrued at least by 1991, and that even with the two year tolling provision for prisoners in Cal.Civ.Proc. Code § 352.1(a) added to the one year statute of limitations, his claims were time barred in 1994.

The district court failed to consider whether § 352.1(a) can be applied retroactively to plaintiffs whose causes of action accrued before January 1995. In *Fink v. Shedler*, 192 F.3d 911 (9th Cir.1999), the Ninth Circuit answered this retroactivity question. After considering an analogous issue under Arizona law raised in *Tworivers v. Lewis*, 174 F.3d 987, 993 (9th Cir. 1999), as well as the implications of giving § 352.1(a) either complete retroactive or exclusively prospective effect, the court adopted a middle course. We held that "claims ... that accrued before January 1, 1995 are tolled for two years from accrual, or until January 1, 1995, *whichever occurs later*, as long as such an application does not result in manifest injustice." *Fink*,

192 F.3d at 916 (emphasis added) (citing *Tworivers*, 174 F.3d at 995–96; *Parker*, 975 F.Supp. at 1272). Under the rule in *Fink*, Johnson's claims against warden Rowland are timely since they are tolled until January 1, 1995, and he filed suit on February 24, 1995, well within the one year statute of limitations.[3]

## B. Merits

As to both warden Rowland and warden Gomez, the R & R concluded that Johnson failed to state a claim upon which relief could be granted. More specifically, the magistrate judge found that the complaint impermissibly relied on conclusory allegations despite three opportunities to amend, guidance from the court as to what must be alleged, and specific admonitions regarding the heightened pleading standard set forth in *Branch v. Tunnell* for constitutional torts involving an element of intent. *See Branch*, 14 F.3d 449, 452, 455–56 (9th Cir.1994) (holding that plaintiffs " 'must state in their complaint nonconclusory allegations setting forth evidence of unlawful intent. The allegations of facts must be specific and concrete enough to enable the defendants to prepare a response, and where appropriate, a motion for summary judgment based on qualified immunity.' ") (quoting and reaffirming *Branch v. Tunnell*, 937 F.2d 1382, 1386 (9th Cir.1991)). The State urges that we affirm on the same grounds.

---

3. Although state tolling rules do not apply to Johnson's § 1986 claim, *see Donoghue v. County of Orange*, 848 F.2d 926, 930 n. 3 (9th Cir.1987), the federal equitable tolling doctrine may. *See Ellis v. City of San Diego*, 176 F.3d 1183, 1189 n. 3 (9th Cir.1999). On remand, Johnson should be given the opportunity to allege when he became aware of the facts supporting his § 1985 conspiracy claim. *See infra*, section III.B.1. This will permit the district court to determine whether the § 1986 claim is saved under the equitable tolling doctrine.

In his opposition to warden Rowland's motion to dismiss, Johnson states that "Rowland misrepresented the issue of racial segregational housing by misleading plaintiff to believe that he did not have a constitutional right not to be segregated and plaintiff did not discover the misrepresentation until 1994." Assuming the complaint is amended on remand to incorporate this allegation, the district court should also consider whether the doctrine of equitable estoppel applies. *See Glus v. Brooklyn Eastern District Terminal*, 359 U.S. 231, 79 S.Ct. 760, 3 L.Ed.2d 770 (1959) (defendant may be estopped from asserting statute of limitations where plaintiff's delay in filing was caused by reliance on defendant's misrepresentations as to governing law), *cited and followed in, American Pipe & Const. Co. v. Utah*, 414 U.S. 538, 559, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974).

### 1. Racial discrimination

■■■■ According to well established precedent, "[p]risoners are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race." *Wolff v. McDonnell*, 418 U.S. 539, 556, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (citing *Lee v. Washington*, 390 U.S. 333, 88 S.Ct. 994, 19 L.Ed.2d 1212 (1968)); *see also Turner v. Safley*, 482 U.S. 78, 84, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987) (noting that "federal courts must take cognizance of the valid constitutional claims of prison inmates. Prison walls do not form a barrier separating prison inmates from the protections of the Constitution."). More specifically, "racial segregation, which is unconstitutional outside prisons, is unconstitutional within prisons, save for 'the necessities of prison security and discipline.'" *Cruz v. Beto*, 405 U.S. 319, 321, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972) (per curiam) (quoting *Lee*, 390 U.S. at 334, 88 S.Ct. 994).

Johnson's Third Amended Complaint makes the following allegations in support of the claim that Rowland and Gomez enforced a policy of racial segregation in inmate housing:

(1) that the wardens confined Johnson to a two-man cell "upon the basis of his skin color," and that this caused him to be subjected to racial assault by other inmates;

(2) that Rowland and Gomez authorized the wardens of other California prisons to segregate inmate housing according to race, ("segregatively confining 'Blacks' in a two-man cell only therefore, prohibiting Black inmates from being 'celled' with 'White' or 'Mexican' inmates");

(3) that this housing segregation policy was not related to a legitimate penological interest and caused racial tension and riots among different ethnic groups;

(4) that Rowland and Gomez were aware that racially dividing inmates "breed[s] enmity and racial tension," but have an interest in enforcing the segre-

gation policy "because prison officials are paid higher wages during a racial crisis that involve[s] inmates rioting"; and

(5) that the wardens have failed to institute procedures to eradicate the policy, despite a 1994 "federal order to stop housing inmates based on their color or ethnicity; but rather place them in the first available cell."

Although inartfully stated, these allegations are sufficient to state a claim for racial discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment. Johnson in essence alleges that a policy of racial segregation in housing has been enforced on him and other inmates throughout the prison system for over a decade. He alleges that the wardens are aware of the deleterious effects of race-based housing, that the practice serves no legitimate penological purpose, and that the practice persists despite a court order in 1994 to house inmates in a race-neutral manner. He even identifies a potential motive for the segregation policy. The district court erred in dismissing this aspect of Johnson's complaint.

■■■■ The district court also erred in dismissing Johnson's § 1985(3) conspiracy claim with prejudice. Although "[a] mere allegation of conspiracy without factual specificity is insufficient," *Karim–Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 626 (9th Cir.1988), the complaint here contains more than a bare allegation of conspiracy, and additional facts in support of the alleged conspiracy may develop as Johnson proceeds with discovery on his equal protection claim. With leave to amend, Johnson may also be able to state a claim for violation of his Eighth Amendment rights insofar as his personal safety has been jeopardized by defendants' policy of racial segregation. *See Helling v. McKinney*, 509 U.S. 25, 31, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993) ("the treatment a prisoner receives and the conditions under which he is confined are subject to scruti-

ny under the Eighth Amendment"); *Toussaint v. McCarthy,* 801 F.2d 1080, 1107 (9th Cir.1986) (prison officials must provide prisoners with "personal safety" since it is a "basic human need"); *Hoptowit v. Ray,* 682 F.2d 1237, 1250 (9th Cir.1982) ("Prison officials have a duty to take reasonable steps to protect inmates from physical abuse"; holding that excessive level of violence among inmates constitutes cruel and unusual punishment) (citing *Ramos v. Lamm,* 639 F.2d 559, 572 (10th Cir.1980)).

However, Johnson's due process claims were properly dismissed with prejudice. Because the Equal Protection Clause covers the actions challenged in the complaint, Johnson may not proceed on a substantive due process theory. *See Patel v. Penman,* 103 F.3d 868, 874 (9th Cir.1996). Nor is a procedural due process claim cognizable where the existence of an unconstitutional policy (segregated inmate housing), rather than the procedure which leads to it, is challenged.

### 2. Overcharging for Telephone Use

Johnson alleges that Respondents conspired with telephone companies to overcharge inmates in exchange for "kickbacks." He claims that a comparison of phone bills reveals that "phone calls plaintiff made to [friends and family members] cost them ... more than a non-incarcerated person who made a call from the same area where plaintiff is incarcerated." As a result of the overcharging, he claims that his mother's phone service was canceled and she now has a mandatory "block" on the phone preventing her from making calls to the prison.

Although prisoners have a First Amendment right to telephone access, this right is subject to reasonable limitations arising from the legitimate penological and administrative interests of the prison system. *See Strandberg v. City of Helena,* 791 F.2d 744, 747 (9th Cir.1986). There is no authority for the proposition that prisoners are entitled to a specific rate for their telephone calls and the complaint alleges no facts from which one could conclude that the rate charged is so exorbitant as to deprive prisoners of phone access altogether. Instead, Johnson admits in the complaint that his mother lost phone service in large measure because of a failure to pay the charges for high frequency use, not just rates for prison calls. Moreover, Johnson's conspiracy allegations are quintessentially vague and conclusory. The district court properly dismissed this aspect of the complaint with prejudice.

### IV. Appointment of Counsel

Although Johnson's complaint states cognizable claims, clarity and legal precision are wanting. The case will undoubtedly proceed more efficiently and effectively if Johnson has legal representation. Accordingly, on remand the district court shall request the appointment of pro bono counsel pursuant to 28 U.S.C. § 1915(a).

### V. Conclusion

The judgment of the district court is affirmed in part and reversed in part. On remand, Johnson shall be granted leave to amend his complaint following the appointment of counsel.

AFFIRMED IN PART AND REVERSED IN PART. Each party shall bear their own costs.