Argued and submitted November 22, 2005, judgment reversed on appeal;
supplemental judgment vacated; cross-appeal dismissed as moot April 19, 2006

T. R.,
*Respondent - Cross-Appellant,*

*v.*

THE BOY SCOUTS OF AMERICA,
a congressionally chartered corporation,
authorized to do business in Oregon;
Cascade Pacific Council, Boy Scouts of America,
an Oregon non-profit corporation;
and James Donald Tannehill,
*Defendants,*

*and*

CITY OF THE DALLES,
a political subdivision of the State of Oregon,
*Appellant - Cross-Respondent.*

0206-05750; A125742

133 P3d 353

Robert E. Franz, Jr., argued the cause for appellant - cross-respondent. On the briefs were Jason M. Montgomery and Law Office of Robert E. Franz, Jr.

Jonathan A. Clark argued the cause for respondent - cross-appellant. With him on the briefs were Kelly Clark and O'Donnell & Clark LLP.

Before Landau, Presiding Judge, and Schuman, Judge, and Deits, Judge pro tempore.

SCHUMAN, J.

## SCHUMAN, J.

The City of The Dalles appeals from a judgment awarding plaintiff $81,260.00 in damages on a claim under the federal civil rights law, 42 USC section 1983, and from a supplemental judgment awarding plaintiff $261,701.92 in costs and attorney fees. The claim was based on allegations that the city was responsible for an employee's sexual abuse of plaintiff. The city assigns error to, among other things, the trial court's denial of its motion for a directed verdict, contending that, as a matter of law, plaintiff did not file his claim within two years of its accrual and therefore did not meet the applicable statute of limitations. Because we agree with that threshold argument, we reverse the judgment against the city and vacate the supplemental judgment, without reaching the city's other arguments or plaintiff's cross-appeal.[1]

In reviewing the denial of a motion for a directed verdict, we view the facts and all reasonable inferences drawn from them in the light most favorable to the nonmoving party—here, plaintiff. *Rathgeber v. James Hemenway, Inc.*, 335 Or 404, 411, 69 P3d 710 (2003). Under that standard, the relevant facts are as follows.

The city, in cooperation with the Boy Scouts of America, operated an Explorer program designed to introduce young adults to police work. Plaintiff joined the program in 1995, when he was 16, at the urging of the program's advisor, Officer Tannehill of The Dalles Police Department. In the ensuing months, plaintiff and Tannehill began spending time together. They saw each other while Tannehill was both on and off duty, including on occasions that were not part of the Explorer program. Plaintiff began to visit

---

[1] On the merits, the city contends that the trial court should have granted its motion to dismiss and its motion for a directed verdict with respect to plaintiff's claims that the city failed to train its officers and that the city had a custom or practice of deliberate indifference to his rights. Plaintiff cross-appeals from a ruling sustaining defendant's hearsay objection to certain evidence regarding the extent of the city's notice of its employees' actions and from a ruling that limited plaintiff's prayer for economic damages by characterizing lost earning capacity as noneconomic damages.

Tannehill at his home, and Tannehill began regularly providing plaintiff with alcohol. He also began to make inappropriate comments about plaintiff's physical qualities. Ultimately, between January and March 1996, Tannehill and plaintiff engaged in sexual activity on numerous occasions, usually without plaintiff's consent and sometimes under compulsion by Tannehill. Plaintiff inquired of two other officers employed by the city, officers Kirk and Nelson, regarding Tannehill's sexual orientation, but, beyond those limited inquiries, plaintiff did not report Tannehill's abuse because, in plaintiff's words, he was "scared more than anything."

Five years later, in October 2001, plaintiff became aware that Kirk was under investigation for serving alcohol to a minor. Plaintiff contacted the state police to provide information regarding Kirk, and, during his interviews, he also provided information about Tannehill, apparently including information about being sexually abused himself. Shortly thereafter, in October or November 2001, plaintiff was called to testify at a grand jury proceeding regarding the allegations against Tannehill. Plaintiff was not permitted to listen to the testimony of other witnesses, nor was he able to talk about the substance of the proceeding with other people there. However, his observation of the other officers who were called to testify suggested to him that "[e]verybody knew" that "Jim [Tannehill] likes boys, Jim's a queer * * *."

Plaintiff filed his initial complaint in June 2002. It included a common-law negligence claim against the city and a section 1983 claim against Tannehill.[2] The section 1983 claim against the city first appeared in plaintiff's first amended complaint, filed in July 2003; that claim was later amended in April 2004, alleging that, by ignoring reports of Tannehill's abusive tendencies and by failing properly to train its officers, the city deprived plaintiff of his civil rights. The city moved for summary judgment, arguing that the section 1983 claim against it was barred by the statute of limitations. The court denied the motion. Subsequently, at the close of the evidence, the city moved for a directed verdict, renewing its statute of limitations defense. The court again

---

[2] Shortly before trial, the section 1983 claim against Tannehill was dismissed on the ground that it was time barred. Plaintiff does not appeal that ruling.

denied the motion on the ground that a fact question existed as to whether plaintiff timely filed his claim. Ultimately, the jury returned a verdict in favor of plaintiff.

On appeal, the city assigns error to the court's denial of its motion for a directed verdict on the issue of the statute of limitations and to its rulings on a number of substantive issues; plaintiff, in turn, cross-appeals from an evidentiary ruling and a ruling that limited the measure of damages. *See* 205 Or App at 137 n 1. As noted, we conclude that plaintiff's action was barred by the statute of limitations, and we therefore do not reach the city's other assignments of error or plaintiff's cross-appeal.

■ Because section 1983 does not contain a statute of limitations, we apply the state's statute of limitations for personal injury claims. 42 USC § 1988(a) (gaps in federal civil rights acts should be filled by state law); *Wilson v. Garcia*, 471 US 261, 276, 105 S Ct 1938, 85 L Ed 2d 254 (1985) (specifying that federal courts borrow state personal injury statutes of limitations); *Plumeau v. School District #40 County of Yamhill*, 130 F3d 432, 438 (9th Cir 1997) (same). Oregon's statute of limitations for torts is two years.[3] ORS 12.110(1). In order to determine the date upon which the statute of limitations begins to run, that is, the date that a plaintiff's claim accrues, federal interpretations of accrual are controlling. *Johnson v. State of California*, 207 F3d 650, 653 (9th Cir 2000). Under federal law, a claim accrues, not when the injury actually occurs, but "when the plaintiff knows, or should know, of the injury which is the basis of the cause of action." *Id.*

■ According to the city, plaintiff's claim accrued (and the statute of limitations therefore began to run) in March 1996, when plaintiff knew that he was injured and he knew the injury resulted from being sexually abused by Tannehill while Tannehill was on duty as a city employee. Plaintiff contends that his claim did not accrue until he also knew that the city, at least potentially, caused his injury, and that he

---

[3] The parties agree that this case had to be filed within two years of accrual. Neither party argues that the timing provisions of ORS 12.117, dealing with actions based on child abuse, apply, and we do not decide that issue.

did not acquire that knowledge until the grand jury proceeding in October or November 2001. Because plaintiff began his action against the city in June 2002, his claim was timely under his theory and barred under the city's.

Although the United States Supreme Court has not addressed the issue of accrual dates in the specific context of section 1983 claims, it has addressed the general issues of tort claim accrual and discovery on at least two occasions. In *United States v. Kubrick*, 444 US 111, 113-14, 100 S Ct 352, 62 L Ed 2d 259 (1979), the plaintiff was treated at a hospital with an antibiotic and later experienced a hearing loss which he attributed to that treatment. To avoid a statute of limitations defense, the plaintiff argued that his claim against the hospital did not accrue until he learned of "the existence and the cause of his injury" and also "that the acts inflicting the injury may constitute medical malpractice." *Id.* at 113. The district court and court of appeals agreed with the plaintiff, but the Supreme Court reversed, describing the negative policy implications inherent in the plaintiff's position: "[T]he plaintiff in such cases [would not need to] initiate a prompt inquiry and would be free to sue at any time within two years from the time he receives or perhaps forms for himself a reasonable opinion that he has been wronged." *Id.* at 118. The Court adopted a rule under which the limitations period begins when a plaintiff knows that he or she has been injured and knows or should know the cause of the injury; at that point, a plaintiff

> "can protect himself by seeking advice in the medical and legal community. To excuse him from promptly doing so by postponing the accrual of his claim would undermine the purpose of the limitations statute, which is to require the reasonably diligent presentation of tort claims against the Government."

*Id.* at 123. Commenting on *Kubrick* in a later case, *Rotella v. Wood*, 528 US 549, 555, 120 S Ct 1075, 145 L Ed 2d 1047 (2000), the Court held that the "traditional federal accrual rule" is the "injury discovery" rule, under which "discovery of the injury, not discovery of the *other elements of a claim*, is what starts the clock." (Emphasis added.)

What the Court in *Kubrick* and *Rotella* did not clearly state is whether a plaintiff who knows the fact of the injury and its physical cause, but does not know who is *actually* responsible for its infliction, has sufficient knowledge to trigger the obligation of further inquiry so as to begin the limitations period. However, the identity of the tortfeasor is obviously an element of the claim, and it is clear that *Kubrick* and *Rotella* hold that the period begins when a plaintiff has information that would cause a reasonable person to seek the medical or legal advice that would inform him or her that he or she has a potential claim. The implication of the Supreme Court cases, then, is that the claim can accrue before the plaintiff actually knows the identity of the tortfeasor if he or she has sufficient information to cause a reasonable person to make a further inquiry—and that a plaintiff who knows he or she is injured and knows the physical or immediate cause of the injury has such information.

Subsequent federal cases confirm the accuracy of that implication. *E.g.*, *Plumeau*, 130 F3d at 437 ("A plaintiff has a duty to use due diligence in an effort to discover the party responsible for her injury."); *Gould v. U.S. Dept. of Health & Human Services*, 905 F2d 738, 745 (4th Cir 1990), *cert den*, 498 US 1025 (1991) (statute of limitations "does not wait until a plaintiff is aware that an alleged tortfeasor is a federal employee"); *Gibson v. United States*, 781 F2d 1334, 1344 (9th Cir 1986), *cert den*, 479 US 1054 (1987) (accrual occurs when the plaintiff has knowledge of "both the fact of injury and its immediate physical cause"; ignorance as to the involvement of government employees is irrelevant); *Dyniewicz v. United States*, 742 F2d 484, 486 (9th Cir 1984) (once the plaintiff is aware of injury and physical cause, claim accrues regardless of whether identity of tortfeasor is known); *Davis v. United States*, 642 F2d 328, 331 (9th Cir 1981), *cert den*, 455 US 919 (1982) ("In the absence of fraudulent concealment it is plaintiff's burden, within the statutory period, to determine whether and whom to sue."); *Clavette v. Sweeney*, 132 F Supp 2d 864, 874 (D Or 2001) (plaintiff's section 1983 claim was time barred; under *Kubrick*, "the statute of limitations begins to run as soon as the plaintiff knows he or she has been injured and knows the physical cause of that injury").

*Plumeau* is particularly instructive. In that case, the plaintiff was the mother of a grade-school child who was sexually abused on school property by a school employee, the janitor, between 1984 and 1987. 130 F3d at 434-35. The plaintiff did not discover the abuse until 1992, when the child attempted suicide and, in the aftermath, disclosed what had happened. *Id.* at 435. The janitor was convicted of the abuse, and, at a sentencing hearing on September 9, 1993, the plaintiff (according to her testimony) first began to suspect that the school district, as employer of the janitor, was in some measure responsible for the injury. *Id.* She filed a state tort claim and a section 1983 claim against the district in federal court on May 10, 1994. *Id.* The district moved for summary judgment, arguing, among other things, that the plaintiff did not provide the district with notice of her state tort claim within the 270 days allowed by ORS 30.275. *Id.* at 437.

The court held, first, that the 270-day limitation period began not at the sentencing hearing where the plaintiff first learned that the district might be potentially responsible for the abuse, but "long before" that time; the plaintiff had

"a duty to use due diligence in an effort to discover the party responsible for her injury. * * * The Plumeaus knew the abuse took place during school hours and on school property and that the abuser was a school district employee. We agree with the district court that these facts were sufficient to apprise the Plumeaus of their potential claims against the district for failure to supervise [the employee]."

*Id.* The court also held that the same events triggered the statute of limitations for the section 1983 claim: "[T]he date of discovery was May 29, 1992, shortly following [the child's] suicide attempt." *Id.* at 438. Thus, according to the court, the plaintiff's claim against the government employer accrued as soon as she had knowledge of the sexual abuse and of circumstances clearly indicating the relationship between the abuser and his government employer.

In the present case, undisputed facts allow only one conclusion: More than two years before he filed this action, plaintiff knew sufficient facts to trigger the duty to discover

the parties that caused his injury.[4] He knew that he was injured; he knew that sexual abuse inflicted by Tannehill was the physical cause of his injury; he knew that at least some of the abuse occurred while Tannehill was on duty; and he knew that Tannehill was a city employee. A reasonable person would have acted on those facts by "seeking advice in the medical and legal community." *Kubrick*, 444 US at 123.

Further, plaintiff's argument that he obtained sufficient facts to trigger his duty of inquiry only at the grand jury proceeding is not plausible. By plaintiff's own admission, the information that he obtained there amounted only to an awareness that "everybody knew" that Tannehill was gay—a fact that does not give rise to knowledge of any kind of new injury, nor a fresh perspective on an injury already incurred. In sum, at the time of the abuse itself, plaintiff had sufficient information regarding his injury and its physical cause to trigger a reasonably diligent inquiry into whether he had legal recourse and, if so, whether it ran against the city. At that point, his action against the city accrued. He did not file his claim within the statute of limitations. The trial court should have granted the city's motion to dismiss.

Judgment reversed on appeal; supplemental judgment vacated; cross-appeal dismissed as moot.

---

[4] We need not discuss the effect of plaintiff's minority on the statute of limitations because more than two years passed between his eighteenth birthday and the commencement of this action. ORS 12.160.