Argued and submitted June 19, 2007, decision of Court of Appeals reversed, and
case remanded to Court of Appeals for further proceedings March 13, 2008

T. R.,
*Petitioner on Review,*

*v.*

THE BOY SCOUTS OF AMERICA,
a congressionally chartered corporation,
authorized to do business in Oregon;
Cascade Pacific Council,
Boy Scouts of America,
an Oregon non-profit corporation;
and James Donald Tannehill,
*Defendants,*

*and*

CITY OF THE DALLES,
a political subdivision of the State of Oregon,
*Respondent on Review.*

(CC 0206-05750; CA A125742; SC S054071)

181 P3d 758

Kelly Clark, O'Donnell & Clark, LLP, Portland, argued the cause for petitioner on review. With him on the briefs were Kristian Roggendorf and Jonathan Clark.

Robert E. Franz, Jr., Law Offices of Robert E. Franz, Jr., Springfield, argued the case for respondent on review. With him on the briefs was Jason M. Montgomery.

Christina M. Hutchins, Assistant Attorney General, Salem, submitted a brief on behalf of *amicus curiae* State of Oregon.

WALTERS, J.

## WALTERS, J.

Under 42 USC section 1983, plaintiff brought a claim against defendant City of The Dalles[1] (city). Plaintiff asserted that the city's deliberate indifference to his right under the Fourteenth Amendment to the United States Constitution to be free from sexual abuse by a governmental actor constituted a city policy that caused him to be subjected to sexual abuse by a city police officer. The question before us is whether there was evidence from which a reasonable jury could have found, as the jury in this case did, that plaintiff timely filed his section 1983 claim. The city contends that plaintiff's section 1983 claim against the city necessarily accrued in 1996, when the officer, Sergeant James Tannehill, committed the acts of sexual abuse, and that plaintiff did not file his claim within the requisite time thereafter. Plaintiff contends that his section 1983 claim against the city did not accrue until he discovered or should have discovered that the city had a role in causing his injury, that that date was a question of fact for the jury, and that a reasonable jury could have found that plaintiff reasonably did not discover the city's role in 1996.

The trial court agreed with plaintiff that the city's statute of limitations defense required resolution of a question of fact and denied the city's motion for a directed verdict. The Court of Appeals agreed with the city that plaintiff's claim necessarily accrued when Tannehill committed the acts of abuse, concluded that the trial court erred in denying the city's motion, and reversed the judgment against the city. *T. R. v. Boy Scouts of America*, 205 Or App 135, 133 P3d 353 (2006). We allowed plaintiff's petition for review and now reverse the decision of the Court of Appeals and remand the case to that court for further proceedings.

To analyze the opposing contentions, we begin with the facts established at trial, viewing them in the light most favorable to plaintiff. *Boothby v. D.R. Johnson Lumber Co.,*

---

[1] Plaintiff also brought claims against the Boy Scouts of America, Cascade Pacific Council, and James Donald Tannehill. Before trial, the court dismissed plaintiff's claims against the Boy Scouts and Cascade Pacific Council. At trial, plaintiff obtained a verdict against Tannehill. The court entered judgment against Tannehill and he did not appeal from the judgment entered against him.

341 Or 35, 38, 137 P3d 699 (2006). We set forth in some detail the facts upon which plaintiff relied to establish the city's role in causing the harm he suffered, because it is that role that plaintiff asserts he reasonably did not discover until after 1996.

The city police department created and operated an Explorer Scout program. That program was a unit or post of the Cascade Pacific Council, which is a chartered organization of the Boy Scouts of America. The purpose of the city's Explorer Scout program was to introduce teens to law enforcement by educating them about and involving them in police operations. The Boy Scouts of America and the Cascade Pacific Council (together referred to as the Boy Scouts) devised and disseminated policies and procedures to protect participants in their programs from exploitation and sexual abuse. Components of those policies and procedures included the training and education of adults and youth in recognizing, resisting, and reporting sexual abuse. One of the primary Boy Scout mandates is that its programs set up oversight committees to ensure their proper management and supervision.

The Boy Scouts advised the city of its policies and procedures and their importance in preventing child sexual abuse, but the city did not implement or follow them. For instance, the Boy Scouts required that any Explorer program that sent participants to a regional or national conference conduct extensive youth protection training. The city sent participants to such a conference, but did not conduct youth protection training. The city did not caution its officers or Explorers against the dangers of sexual abuse or teach them how to recognize or report sexual abuse. Without training him for the position, the city delegated authority to run the Explorer program to Tannehill, the officer who sexually abused plaintiff. Although the city created an oversight committee "on paper," in reality, as a city officer admitted, it did not exist. The city included a prohibition on fraternization between officers and Explorers in its Explorer Manual, but did not otherwise instruct Tannehill or other officers that they were not to socialize with Explorers outside of authorized program activities. Moreover, when city officials learned

that its officers were engaging in misconduct, such as regularly spending time alone with Explorers and serving them alcohol, the city tolerated and did not discourage the officers' violations. In one instance, when the city learned that an officer was "having an affair" with an Explorer, the department delayed and created impediments to a fair and full investigation and, thereafter, continued to operate the program, unchanged, without protection or oversight.

Plaintiff was 16 years old and living in foster care when Tannehill approached him at a gym, commented on his physique, and suggested that he enroll in the Explorer program. Plaintiff was flattered by the attention. The program offered him a chance to pursue his dream of becoming a police officer and, as plaintiff testified, "It was the most [he'd] ever been needed in [his] life." Shortly after joining the program, Tannehill began spending time alone with plaintiff, on and off duty, during and outside of regular Explorer activities, at Tannehill's home, at the gym, and in Tannehill's car. Tannehill regularly served plaintiff alcohol and made sexual comments to him. After a period of time, Tannehill began touching plaintiff inappropriately, and, ultimately, sexually molested him. Plaintiff was confused about whether what was happening to him was normal. He asked two other city police officers about Tannehill's serving him alcohol and whether Tannehill had an interest in boys. One just laughed, the other told him he didn't want to talk about it. When plaintiff tried to distance himself from Tannehill, Tannehill became angry and used threats and intimidation to coerce continued contact. As soon as he could, plaintiff took an early high school graduation and joined the army.

Plaintiff was 22 years old and working in Washington state when, in October 2001, his grandmother read him a newspaper article that reported that the Oregon State Police had arrested an officer from The Dalles (not Tannehill) on charges of serving alcohol to a minor. The newspaper article included a number to call to provide information. Plaintiff responded, and in answers he gave during in-person and phone interviews by the state police over the next few weeks, disclosed Tannehill's actions. Within the month, plaintiff attended grand jury proceedings concerning Tannehill and

found that many city officers were also present to testify. Based on statements those officers made and questions the grand jury asked, plaintiff suspected for the first time that department members, and perhaps even command staff, may have permitted the sexual abuse that Tannehill had committed and failed to protect Explorers, including himself, against such abuse. Plaintiff filed his section 1983 claim against the city on July 7, 2003, within two years of those October 2001 events.

At trial, the city moved for a directed verdict, asserting, as one basis for its motion, that the uncontroverted evidence established that plaintiff's section 1983 claim was barred by the statute of limitations. The city argued that the two-year general personal injury limitations period found in ORS 12.110(1)[2] applied to plaintiff's section 1983 claim, and that because plaintiff had not commenced his action against the city within the requisite time after Tannehill's acts,[3] his claim was barred. Plaintiff agreed that ORS 12.110(1) stated the applicable limitations period, but contended that he reasonably had not discovered the facts that gave rise to his section 1983 claim against the city at the time that Tannehill committed the acts of abuse, and that the date on which his claim against the city accrued was a question of fact for the

---

[2] ORS 12.110(1) provides:

"An action for assault, battery, false imprisonment, or for any injury to the person or rights of another, not arising on contract, and not especially enumerated in this chapter, shall be commenced within two years; provided, that in an action at law based upon fraud or deceit, the limitation shall be deemed to commence only from the discovery of the fraud or deceit."

[3] Because plaintiff was a minor, his minority was not counted in computing the two-year limitations period set forth in ORS 12.110(1). During the relevant time period, ORS 12.160 (1995) provided:

"If, at the time the cause of action accrues, any person entitled to bring an action mentioned in ORS 12.010 to 12.050, 12.070 to 12.250 and 12.276 is:

"(1) Within the age of 18 years,

"(2) Insane, or

"(3) Imprisoned on a criminal charge, or in execution under the sentence of a court for a term less than the person's natural life, the time of such disability shall not be a part of the time limited for the commencement of the action; but the period within which the action shall be brought shall not be extended more than five years by any such disability, nor shall it be extended in any case longer than one year after such disability ceases."

jury. The trial court agreed, denied the city's motion, and instructed the jury that, for the city to prevail on its statute of limitations affirmative defense, it was required to prove that, before July 7, 2001, "plaintiff either knew or, in the exercise of reasonable care, should have known facts which would make a reasonable person aware of the substantial possibility that the City of the Dalles caused the plaintiff some harm." The jury returned a verdict against the city and made a special finding that "plaintiff discover[ed] that he had a claim against the City of the Dalles" in October 2001.

In the Court of Appeals, the city assigned error to the trial court's denial of its motion for a directed verdict on statute of limitations grounds. The Court of Appeals agreed with the city as to that assignment of error and reversed the judgment against the city. Applying a "discovery" accrual rule, the Court of Appeals held that plaintiff's section 1983 claim against the city accrued, as a matter of law, in 1996, when plaintiff knew that he was injured and that Tannehill was the physical cause of his injury. The Court of Appeals reasoned that plaintiff's knowledge of his injury and its physical cause triggered a duty to inquire further into the city's role in causing that injury "by 'seeking advice in the medical and legal community[,]' " and therefore commenced the running of the statute of limitations. *T. R.*, 205 Or App at 143 (quoting *United States v. Kubrick*, 444 US 111, 123, 100 S Ct 352, 62 L Ed 2d 259 (1979)). Because plaintiff concededly did not bring his action within the required time after Tannehill's 1996 actions, the Court of Appeals ruled that the trial court erred in denying the city's motion for a directed verdict on statute of limitations grounds. The Court of Appeals did not reach the city's other assignments of error. We allowed plaintiff's petition for review.

The Court of Appeals assumed, and the city agrees, that the appropriate accrual rule is a discovery rule. The issue that this case presents is whether the trial court properly applied that rule. If the only conclusion a reasonable jury could have reached was that plaintiff should have discovered that he had a potential section 1983 claim against the city in 1996, when Tannehill committed the acts of abuse, the trial

court erred in denying the city's motion for a directed verdict.[4] If, however, a reasonable jury could also have reached the conclusion that plaintiff reasonably did not discover the city's role in 1996, the trial court correctly denied the city's motion.

 We begin our analysis with an explanation of the facts that give rise, generally, to a section 1983 claim against a municipality. A municipality can be held responsible for a violation of a citizen's constitutional rights under section 1983 when, and only when, it has a policy, custom, or usage that violates those rights. *Monell v. New York City Dept. of Social Services*, 436 US 658, 690-91, 694, 98 S Ct 2018, 56 L Ed 2d 611 (1978). A city is not liable under section 1983 merely because it "employs a tortfeasor." *Id.* at 691. In other words, *respondeat superior* liability does not apply in section 1983 actions. Rather, the municipality itself must be the actor, and its own actions must violate the citizen's constitutional rights. A plaintiff must prove that the municipality has adopted a policy or custom, and that the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy," caused the constitutional violation. *Id.* at 694.

 That policy need not be written in order to be "official":

> "[A]lthough the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution, local governments * * * may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels. As Mr. Justice Harlan, writing for the Court, said in *Adickes v. S.H. Kress & Co.*, [398 US 144, 167-68, 90 S Ct 1598, 26 L Ed 2d 142 (1970)]: 'Congress included customs and usages [in § 1983] because of the persistent and widespread discriminatory practices of state officials . . . . Although not authorized by written law, such practices of

---

[4] It is important to note that the city does not argue here, and did not argue below, that there was some date between 1996 and 2001 when the statute of limitations began to run.

state officials could well be so permanent and well settled as to constitute a "custom or usage" with the force of law.' "

*Id.* at 690-91. Furthermore, a municipality's failure to act can constitute an official policy that gives rise to liability if that failure evidences a " 'deliberate indifference' to the rights of its inhabitants." *Canton v. Harris*, 489 US 378, 388-89, 109 S Ct 1197, 103 L Ed 2d 412 (1989); *see also Board of Comm'rs of Bryan Cty. v. Brown*, 520 US 397, 407, 117 S Ct 1382, 137 L Ed 2d 626 (1997) (citing *Canton*).

In this case, plaintiff alleged, and was required to prove, that he had a constitutional right under the Fourteenth Amendment to the United States Constitution to be free from sexual abuse by a governmental actor, and that the city's deliberate or conscious disregard for that right constituted a city policy that caused him to be subjected to such abuse. *See Monell*, 436 US at 691-92 (municipality's official policy or custom must cause constitutional violation to render it liable under section 1983); *Canton*, 489 US at 388-89 (deliberate indifference to rights of inhabitants may constitute official city policy); *Ingraham v. Wright*, 430 US 651, 673-74, 97 S Ct 1401, 51 L Ed 2d 711 (1977) (liberty interest of Fourteenth Amendment implicated where school officials inflicted appreciable pain on a child).

■ As we have noted, the accrual rule that applies to determine when plaintiff's section 1983 claim accrued is a "discovery" accrual rule. We set forth the reason for recognizing a discovery accrual rule in *Berry v. Branner*, 245 Or 307, 312, 421 P2d 996 (1966):

> "To say that a cause of action accrues to a person when she may maintain an action thereon and, at the same time, that it accrues before she has or can reasonably be expected to have knowledge of any wrong inflicted upon her is patently inconsistent and unrealistic. She cannot maintain an action before she knows she has one. To say to one who has been wronged, [y]ou had a remedy, but before the wrong was ascertainable to you, the law stripped you of your remedy, makes a mockery of the law."

(Internal quotation marks omitted.) Following that rationale, we have held that the statute of limitations does not begin to run until a reasonably prudent plaintiff perceives both the

injury and the role that the defendant has played in that injury. *Shiele v. Hobart Corporation,* 284 Or 483, 490, 587 P2d 1010 (1978). In both respects Oregon law mirrors the generally applicable common-law discovery rule. Dobbs frames that rule as follows:

> "[T]he usual idea seems to be that the statute will not begin to run until
>
> "(a) all of the elements of the tort are present *and*
>
> "(b) the plaintiff discovers, or as a reasonable person should have discovered,
>
> "(i) that she is injured and
>
> "(ii) that the defendant, or the defendant's product or instrumentality, had a causal role in the injury, or that there was enough chance that defendant was connected with the injury to require further investigation that in turn would have revealed the defendant's connection."

Dan Dobbs, 1 *The Law of Torts, Practitioner Treatise Series* § 218, 554 (2001) (emphasis in original).

■ There are two aspects of the discovery accrual rule that warrant further attention. First, the limitations period begins to run as to each defendant when the plaintiff discovers, or a reasonable person should have discovered, that defendant's causal role. *See Adams v. Oregon State Police,* 289 Or 233, 237-39, 611 P2d 1153 (1980) (plaintiff knew towing company had found his car but claim against state did not accrue until later when plaintiff learned of state's causal role in the towing). When the facts that should alert a plaintiff to a defendant's role are different for different defendants, the date of accrual may also be different as to each. As one court put it, "[C]laims based on two independent legal theories against two separate defendants can accrue at different times." *E-Fab, Inc. v. Accountants, Inc. Services,* 153 Cal App 4th 1308, 1323 (2007) (citing *Fox v. Ethicon Endo-Surgery, Inc.,* 35 Cal 4th 797, 802-03, 110 P3d 914 (2005)).

■ Second, when a duty to investigate exists, the statute of limitations only begins to run if the investigation would have disclosed the necessary facts. *Greene v. Legacy Emanuel Hospital,* 335 Or 115, 123, 60 P3d 535 (2002) ("The period of

limitations * * * commences from the earlier of two possible events: (1) the date of the plaintiff's actual discovery of injury; or (2) the date when a person exercising reasonable care should have discovered the injury, *including learning facts that an inquiry would have disclosed.*") (original emphases omitted; emphasis added). *See also* Dobbs, 1 *The Law of Torts* § 218 (statute will not begin to run until there is "enough chance that defendant was connected with the injury to require further investigation *that in turn would have revealed the defendant's connection*") (emphasis added).

In this case, the Court of Appeals put its own gloss on the discovery rule and concluded that, *as a matter of law,* (1) a reasonable plaintiff who knows that he or she has been injured and knows the physical cause of the injury would investigate the possible existence of an additional defendant that may have caused the injury "by seeking advice in the medical and legal community"; and (2) the limitations period commences when that duty to investigate arises. *T. R.,* 205 Or App at 142-43.

There are three problems with that reasoning. First, as we have explained, the discovery rule recognizes that the existence of one type of wrongdoing does not necessarily disclose tortious conduct of a different sort, by a different tortfeasor. A plaintiff who knows that one defendant has caused him or her harm does not necessarily know that another defendant has done so in a different way. Depending on the facts of the particular case, a reasonable person who knows the identity of the tortfeasor who was the immediate physical cause of his or her injury may or may not be alerted to the possible existence of other tortfeasors.

■ Second, a plaintiff who is alerted to the need for further investigation only is required to conduct an investigation that a reasonable person in his or her circumstances would conduct. *See Doe v. American Red Cross,* 322 Or 502, 511-13, 910 P2d 364 (1996) (discovery is determined by objective, reasonable person standard). A plaintiff is not necessarily charged with employing experts to uncover facts that a reasonable person in plaintiff's circumstances could not uncover.

■ Third, the Court of Appeals decided that the statute
of limitations began to run because plaintiff had a duty to
investigate. *T. R.*, 205 Or App at 142-43. That is not so, how-
ever, unless an investigation would have disclosed the nec-
essary facts. The party who asserts the statute of limitations
defense must prove that an investigation would have dis-
closed those facts. *See Doe*, 322 Or at 514-15 (party who
asserts limitations defense must prove the facts investigation
would disclose). The Court of Appeals failed to consider that
aspect of the discovery rule, and erroneously concluded that
the duty to investigate alone was sufficient to commence the
running of the statute of limitations.

The Court of Appeals based its decision on two
United States Supreme Court cases, *United States v.
Kubrick*, 444 US 111, 100 S Ct 352, 62 L Ed 2d 259 (1979),
and *Rotella v. Wood*, 528 US 549, 120 S Ct 1075, 145 L Ed 2d
1047 (2000). But neither *Kubrick* nor *Rotella* is a section 1983
case, and neither bears on whether a plaintiff's knowledge of
the existence of one tortfeasor charges the plaintiff with
knowledge of the existence of other defendants or whether a
plaintiff should be expected to hire experts to investigate the
possibility that other defendants exist. In *Kubrick*, the Court
described both the fact "that [the plaintiff] has been hurt"
*and* "who has inflicted the injury" as "critical facts" that a
plaintiff must know to start the statute of limitations run-
ning. 444 US at 122. In *Kubrick*, the plaintiff knew both crit-
ical facts. He knew that he had been harmed and that his
physician had harmed him. Plaintiff argued, however, that
his claim did not accrue until he also realized the legal con-
sequences of those facts: that "the acts inflicting the injury
may [have] constitute[d] medical malpractice." *Id.* at 113. In
rejecting plaintiff's argument, the Supreme Court explained
that a plaintiff cannot be expected to know facts that only an
expert could obtain, but a plaintiff can be expected to seek out
an expert in order to learn the legal ramifications of known
facts. The Court stated:

> "We are unconvinced that for statute of limitations pur-
> poses a plaintiff's ignorance of his legal rights and his
> ignorance of the fact of his injury and its cause
> should receive identical treatment. That he has been

injured in fact may be unknown or unknowable until the injury manifests itself; and the facts about causation may be in control of the putative defendant, unavailable to the plaintiff or at least very difficult to obtain. The prospect is not so bleak for a plaintiff in possession of the critical facts that he has been hurt and who has inflicted the injury. He is no longer at the mercy of the latter. There are others who can tell him if he has been wronged, and he need only ask."

*Id.* at 122. *Kubrick* stands for the proposition that a plaintiff who knows the facts establishing that a particular defendant played a causal role in his or her injury must seek medical and legal advice about whether those facts justify legal action—advice within the expertise of those consultants. *Kubrick* does not stand for the proposition that a plaintiff who does not know the facts indicating that a particular defendant played a causal role in his or her injury must employ the assistance of doctors or lawyers to uncover such facts.

*Rotella* also does not convince us that we should reach a different conclusion. As in *Kubrick*, the plaintiff in *Rotella* both knew that he had been injured and that the named defendant had injured him by engaging in illegal action. Plaintiff argued, however, that his Racketeer Influence and Corrupt Organization (RICO) claim did not accrue until he discovered, in addition to those critical facts, that the named defendant had engaged in a pattern and practice of illegal acts. 528 US at 552-53. The Court rejected the plaintiff's argument, reasoning that Congress had modeled RICO on the Clayton Act, and that adopting an accrual rule that required discovery of a defendant's pattern and practice in addition to that defendant's discrete illegal act would not comport with Clayton Act limitations or the purposes of the RICO statute. *Id.* at 557-58. *Kubrick* and *Rotella* are consistent with the discovery accrual rule as we have stated it.[5]

---

[5] The city also urges that we consider, and the Court of Appeals cited and relied on, a Ninth Circuit decision, *Plumeau v. School Dist. #40 County of Yamhill*, 130 F3d 432 (9th Cir 1997). In that case, a school janitor sexually abused a young girl, who, five years later, attempted suicide. Shortly thereafter, the girl told her mother about the abuse and she and her mother brought an action against the school district. The court affirmed summary judgment for the district. As to the plaintiffs' state law claims, the court rested its ruling on the fact that the plaintiffs did not give the requisite tort claim notice within the time required after the girl informed her mother of the abuse. *Id.* at 440. As to the plaintiffs' section 1983 claim, the court

■■■■■ To restate, then, the discovery accrual rule provides that a plaintiff's claim against a particular defendant accrues when (1) the plaintiff knows, or a reasonable person should know, that there is enough chance that the defendant had a role in causing the plaintiff's injury to require further investigation; and (2) an investigation would have revealed the defendant's role. Application of the discovery accrual rule is a factual issue for the jury unless the only conclusion a reasonable jury could reach is that the plaintiff knew or should have known the critical facts at a specified time and did not file suit within the requisite time thereafter. *See Brown v. J. C. Penney Co.*, 297 Or 695, 705-06, 688 P2d 811 (1984) (appellate court cannot set aside trial court's denial of motion for directed verdict unless there is no evidence from which the jury could have found the necessary facts). In this case, the specific question presented is whether the only conclusion that a reasonable jury could have reached was that plaintiff's knowledge in 1996 should have alerted him to the possibility that the city played a causal role in his abuse, that a reasonable person in plaintiff's circumstances would have investigated that possible role, and that such an investigation would have disclosed facts indicating the city's role.[6]

The city argues that, in 1996, plaintiff knew that he had been injured, that Tannehill was the immediate cause of his injury, and that Tannehill was employed by the city. The city argues that a reasonable jury would necessarily have concluded from those facts that plaintiff should have known

rested its ruling on the plaintiffs' failure to adduce sufficient facts to establish district liability. *Id.* at 438-39. *Plumeau* did not decide that the plaintiffs' section 1983 action against the district was untimely. To the contrary, in *dicta*, the court stated that the opposite assumption was appropriate because the plaintiffs filed their section 1983 claim within two years from the "date of discovery." The court considered the "date of discovery" to be the date the girl manifested injury from the abuse, attempted suicide, and reported the abuse to a trusted adult, not the date the girl was subjected to the acts of abuse. *Id.* at 438. We do not find *Plumeau* to be inconsistent with the discovery accrual rule as we have articulated it.

[6] In addition to arguing that the trial court correctly denied the city's motion for a directed verdict because there was a question of fact as to when plaintiff reasonably should have discovered the city's role, plaintiff also argues that the trial court ruled correctly because a question of fact existed as to when he reasonably should have discovered that the acts of abuse caused him harm. Because we decide that there was a question of fact as to when plaintiff reasonably should have discovered the city's role, we do not address plaintiff's additional argument or whether plaintiff properly preserved that argument.

that the city was responsible for Tannehill's acts, or at least investigated its potential liability. Although we agree that a reasonable jury *could* have reached that conclusion, we do not agree that that was the *only* conclusion a reasonable jury could have reached. Tannehill's wrongful acts were very personal and private. Although some of those acts were committed while Tannehill was on duty, others were not, and the nature of the acts did not necessarily indicate that Tannehill committed them within the scope of his employment. More importantly, under section 1983, the city could not be held liable for Tannehill's acts solely because it employed him. The city's liability necessarily required proof of municipal wrongdoing—wrongdoing of a different kind than Tannehill's. A reasonable jury could have found that, at the time of the abuse, plaintiff did not suspect the city itself of causing him harm, and that plaintiff's state of mind at that time was a reasonable one.

Two particular aspects of this case support our conclusion. First, plaintiff was a minor when Tannehill committed the acts of abuse. In reviewing the facts presented to the jury, we look at them, as the jury was required to do, from the perspective of a reasonable person under the relevant circumstances, which include plaintiff's minority.[7] *See* W. Page Keeton, *Prosser and Keeton on Torts* § 32, 179-80 (5th ed 1984) (in determining whether actions of child tortfeasor are reasonable, view actions from the perspective of a reasonable child).[8] As this court explained in *Doe:*

"The test involved in such circumstances is an objective one: 'In most cases, the inquiry will concern what a plaintiff

---

[7] The Court of Appeals noted that although plaintiff was a minor when Tannehill committed the acts of abuse, he was no longer a minor when he turned 18 and was permitted time to bring his claim thereafter. *See* ORS 12.160 (1995) (tolling statute during minority, but for no more than five years total or one year after the plaintiff reaches the age of majority, whichever first occurs). The Court of Appeals therefore granted no significance to the fact that plaintiff was a minor when he was subjected to the abuse. *T. R.*, 205 Or App at 143 n 4. In our view, because the city argues that plaintiff's claim accrued when Tannehill committed the abuse and plaintiff was a minor at that time, we cannot disregard the fact of plaintiff's minority. The discovery rule requires a determination of what a reasonable person would have known at the time of asserted accrual.

[8] The "reasonable person" standard is generally discussed in terms of the actions a reasonable defendant would have taken, but it is equally applicable where there is a contention that a plaintiff did not act reasonably.

should have known in the exercise of reasonable care. In such cases, the relevant inquiry is how a reasonable person of ordinary prudence would have acted in the same or similar situation.' "

322 Or at 512 (quoting *Gaston v. Parsons*, 318 Or 247, 256, 864 P2d 1319 (1994)). A reasonable jury could have found that a teenager subjected to sexual abuse by a police officer reasonably may have believed that that officer's acts were the acts of a man who was acting on his own, based upon his own sexual proclivities, and reasonably may not have suspected that higher city officials could have been to blame for his predicament.

Second, when plaintiff ventured to question two city officers about Tannehill's drinking with him and whether Tannehill had an interest in boys, one exhibited acceptance of the misconduct and the other discouraged any further inquiry. The reactions of those adults did not put plaintiff on notice that what Tannehill or the city was doing, or failing to do, might merit investigation. *See Gaston*, 318 Or at 257 (assurances by persons in positions of trust and confidence that action is not tortious may be considered in determining whether reasonable person would have engaged in further investigation). Tannehill coerced and intimidated plaintiff and was in a position of authority in the department. A reasonable jury could have found that the responses that plaintiff received when he attempted to question other officers about Tannehill's behavior served to reinforce plaintiff's reasonable belief that further inquiry would not be productive.

In summary, we hold that, based on the evidence in this record, a reasonable jury could have found that, under the circumstances existing in 1996, plaintiff acted reasonably in not undertaking an investigation of whether the city itself had caused him harm.

Alternatively, and even if a reasonable person would have made inquiry as to the city's role in 1996, we cannot conclude, as a matter of law, that an inquiry would have revealed facts indicating that a city policy may have caused plaintiff harm. *See Doe*, 322 Or at 514 (accrual depends on

what facts party with duty to investigate would have been able to learn); *see also Kubrick*, 444 US at 122 (acknowledging that a plaintiff may not be able to sue when the facts are "in control of the putative defendant"). The statute of limitations is an affirmative defense, and the city had the burden of persuasion on that issue. ORCP 21 G(2) (statute of limitations is affirmative defense); *Keller v. Armstrong World Industries, Inc.*, 342 Or 23, 38 n 12, 147 P3d 1154 (2006) (citing *Nelson v. Hughes*, 290 Or 653, 664-65, 625 P2d 643 (1981)). The city has not argued and has not pointed to evidence that, had plaintiff inquired, its officials would have disclosed that they knew that they should have had policies and procedures in place to protect plaintiff but did not, or that, although they knew that their officers were engaging in misconduct that could lead to sexual abuse, they permitted the misconduct to continue. To the contrary, the record discloses evidence that when plaintiff did make a limited inquiry into Tannehill's behavior, his inquiries were rebuffed. As one witness put it, the city styled its management after an ostrich with its head in the sand, not wanting to know about, admit, or correct any wrongdoing. A former sheriff's deputy testified, for instance, that, in approximately 1992, he reported concerns about a party where city officers furnished alcohol to minors and about one officer in particular who was rumored to be having what was referred to as "an affair" with a teenage Explorer. That officer said he was "just having fun" with the teenager, and the city did nothing in response to that report other than warn the officer that he should be very careful with the relationship. The fraternization and the "affair" continued, and there was evidence that when that "affair" was revealed, the police department actively hindered its investigation and prosecution. In addition, a former Explorer testified that, in approximately 1998, when he told the city manager about finding several of his friends "falling down drunk" at the home and in the presence of the officer who was arrested in 2001 for serving alcohol to minors, the city manager replied that he "did not want to hear that," and, to the knowledge of that witness, failed to follow up with any investigation. Whether the city would have divulged facts indicating its responsibility for plaintiff's injuries if he had inquired was certainly a jury question.

The city's final argument is that plaintiff did not learn facts in October 2001 that he did not know at the time of Tannehill's abuse and, therefore, plaintiff must have known all the facts necessary for his claim to accrue at the time of the abuse. As the city portrays it, the only fact plaintiff learned in 2001 was that others knew that Tannehill was gay, a fact plaintiff had known all along. But that portrayal does not accurately capture the facts presented to the jury. The jury heard evidence that it was in October 2001 that plaintiff learned that an officer other than Tannehill had engaged in similar misconduct, *i.e.*, that Tannehill's misconduct might not be that of a lone officer, but could be more widespread. It was then that plaintiff was questioned by state police officers who demonstrated that Tannehill's behavior was cause for governmental concern, and it was during the grand jury proceedings that followed that plaintiff learned that the city may have known about widespread misconduct in the Explorer program and failed to protect him from being abused. Perhaps the jury could have drawn the inference from the evidence that the city urges, but we cannot say that it was required to do so.

Because there were facts from which a reasonable jury could have found, as the jury did in this case, that plaintiff's section 1983 claim against the city did not accrue at the time Tannehill committed the acts of sexual abuse, the trial court did not err in denying defendant's motion for a directed verdict on statute of limitations grounds.

The decision of the Court of Appeals is reversed, and the case is remanded to the Court of Appeals for further proceedings.