130 F.3d 432
 122 Ed. Law Rep. 588, 97 Cal. Daily Op. Serv. 9081,
97 Daily Journal D.A.R. 14,663
 Barbara PLUMEAU, Personally; Amanda Barton-Plumeau, by her
mother and guardian ad litem, Barbara Plumeau,
Plaintiffs-Appellants,
v.
SCHOOL DISTRICT #40 COUNTY OF YAMHILL; and Adrian Moore,
Defendants-Appellees.
 No. 96-35074.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 6, 1997.
Decided Dec. 4, 1997.
 
 Kent L. Gubrud, McMinnville, OR, for plaintiffs-appellants.
 Carol J. Fredrick (argued), Larry A. Brown (on the brief), McMinnville, OR, for defendants-appellees.
 Appeal from the United States District Court for the District of Oregon; Janice M. Stewart, Magistrate Judge, Presiding. D.C. No. CV-94-00569-JMS.
 Before: FLETCHER and TASHIMA, Circuit Judges, and SCHWARZER,* District Judge.
 FLETCHER, Circuit Judge.
 
 
 1
 Amanda Barton-Plumeau and her mother Barbara Plumeau ("Plumeaus") appeal the grant of summary judgment to the County of Yamhill, Oregon School District # 40 ("School District"), dismissing their claims against the School District for Amanda's sexual abuse by a school janitor on school premises.[1] We have jurisdiction, 28 U.S.C. §§ 636(c) and 1291, and we affirm.FACTS
 
 
 2
 Between 1983 and 1987 Amanda Barton-Plumeau, then 6-9 years of age, attended Memorial Grade School, a public grade school in McMinnville, Oregon. During this period, Amanda was sexually abused on school premises by the school janitor, Adrian Moore. Memorial School employees and School District officials claim that they knew nothing about the abuse at the time. The Plumeaus contend that Moore's behavior should have alerted school personnel to the possibility that Moore was abusing children at Memorial.
 
 
 3
 When Amanda was in the first grade, Amanda was standing in line for lunch in the school cafeteria when she saw Moore and ran out of line to greet him. Moore picked her up and hugged her. Amanda recalls that her first grade teacher reprimanded her and told her to get back in line. Later the same day, Amanda was taken to the office of the school principal, Valva Just. told Amanda that it was inappropriate for Moore to pick her up and that she should not permit him to do so. Just did not ask Amanda whether Moore had any other physical contact with her.
 
 
 4
 Beginning in early 1986, Just began receiving complaints about Moore's behavior from Memorial School employees. Jean Bresee, an instructional technician, reported that on numerous occasions she had observed Moore standing around on the playground watching children. Jean Meicho, a teacher's assistant responsible for playground duty during recess, also reported to Just that she witnessed Moore standing around on the playground, holding the little girls' hands, and hugging them.
 
 
 5
 In September 1986, Bresee and Meicho asked Just to come out on the playground to observe Moore's behavior. According to Just's records, when she went to the playground Moore came out to watch the children, but quickly went back inside when he saw her. After this incident, Just asked Meicho to report to her whenever she witnessed Moore watching children on the playground. Other Memorial School staff also reported to Just that Moore stood around watching children on the playground. Several teachers reported to Just that Moore spent almost an entire morning observing aerobic exercise classes. Mrs. Williams, a teacher, reported to Just that she had observed Moore picking up children on the playground.
 
 
 6
 Just informed the School District's Maintenance Supervisor and Moore's official direct supervisor, Hal Schultz, of the complaints about Moore. On June 9, 1986, Just and Schultz held a conference with Moore to discuss their concerns about his work. They warned Moore to stop watching and picking up children on the playground. In the Fall of 1986, Just and Schultz held two more conferences with Moore to discuss their concerns about his failure to perform adequately his job duties and his wasting time standing around watching children. They admonished him in writing to stay off the playground while children were present and told the teachers aides to notify Just if they observed Moore on the playground during the school day.
 
 
 7
 Despite these repeated admonitions, the complaints about Moore continued. On January 20, 1987, Bresee reported to Just that she discovered Moore standing alone in a darkened room peeking out the window onto the playground where the children were playing. On February 2, 1987, Just and Mr. Williams, the principal at Adams Elementary School, another grade school in the School District, arranged a job-switch between Moore and Leonard Cushman, a disabled janitor from Adams School, ostensibly to accommodate Cushman's disability, and to improve Moore's work performance. At the time of the switch, Just informed Mr. Williams that Moore had been observed watching children and she also told Mr. Williams she was concerned about Moore's job performance. She did not inform Mr. Williams that Moore had been observed holding students' hands, hugging them, and picking them up.
 
 
 8
 Less than three months after Moore's transfer to Adams School, the father of a female student at Adams School called Mr. Williams to report that his daughter told him that she had been sexually abused by Moore while she was in his work area. Mr. Williams immediately reported these allegations to the Interim Superintendent of the School District. The following day Mr. Williams and a School District Child Development Specialist interviewed the girl and others who reported similar behavior by Moore.
 
 
 9
 The day after the Adams School father complained, the School District fired Moore. The following day he was arrested on charges of sexual abuse. The Children's Services Division ("CSD") and the McMinnville Police Department ("MPD") were informed of the allegations and both agencies conducted investigations. These investigations disclosed that Moore sexually abused approximately seventeen Adams students during his two and one half months at the school. Moore admitted to the police that he had touched the children when they were alone in his work area to help with janitorial tasks. He pled guilty to three counts of Sexual Abuse in the First Degree of ten girls and was sentenced a term of imprisonment not to exceed five years on each count. However, the court suspended Moore's sentence and ordered that he be placed on probation for five years.
 
 
 10
 The MPD and CSD investigators also interviewed Memorial School personnel, including Just who seemed to discourage investigation at Memorial. According to MPD Detective Day, Just minimized the facts about Moore having been observed picking up and watching children and "did not seem to want to talk about Moore's transfer to Adams or anything else concerning Moore." The investigators found one child who had been sexually abused at Memorial School. However, no further investigation was carried out at Memorial School and Moore's abuse of Amanda was not discovered at that time.
 
 
 11
 In May 1992, five years after Moore's initial arrest and conviction, Amanda attempted suicide and was hospitalized. Shortly after being admitted to the hospital, Amanda disclosed for the first time that she had been sexually abused by Moore between 1984 and 1987. The CSD, MPD, and the Yamhill County District Attorney immediately investigated Amanda's claims. Barbara Plumeau fully cooperated with the agencies' investigations. Moore pled guilty to First Degree Sexual Abuse of Amanda, was convicted, and sentenced to five years' probation.
 
 
 12
 At Moore's sentencing hearing on September 9, 1993, a Victims' Assistance Worker from the Yamhill County District Attorney's office, Kathleen Robbins, told Barbara Plumeau that she believed that Just was responsible for what had happened to Amanda and the other students at Memorial. At this point, the Plumeaus claim they began investigating Just's actions and the actions of the School District in regard to Amanda's abuse. On May 10, 1994, the Plumeaus' counsel formally notified the School District, through its counsel, of the Plumeaus' claims against the School District.
 
 
 13
 The Plumeaus brought this action in federal court against the School District and Moore for negligence, battery and sexual abuse under the Oregon Tort Claims Act, Oregon Revised Statutes §§ 30.260-.300 ("OTCA"), and for violation of Amanda's civil rights, under 42 U.S.C. § 1983. The parties consented to hearing before a magistrate judge. Fed.R.Civ.P. 73; 28 U.S.C. § 636(c). The magistrate judge granted summary judgment to the School District on all counts. Plumeau v. Yamhill County Sch. Dist. #40, 907 F.Supp. 1423 (D.Or.1995). The magistrate judge concluded that the Plumeaus state tort claims were barred for failure to notify the School District of their claims within the time specified by the OTCA. Id. at 1433-35; Or.Rev.Stat. § 30.275. The magistrate judge further held that the facts did not support municipal liability under § 1983. Id. at 1435-46. The Plumeaus timely appealed.
 
 ANALYSIS
 I. Standard of Review
 
 14
 We review a grant of summary judgment de novo. Jesinger v. Nevada Fed. Credit Union, 24 F.3d 1127, 1130 (9th Cir.1994). Our review is governed by the same standard used by the trial court under Federal Rule of Civil Procedure 56(c). We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. Bagdadi, 84 F.3d at 1197. We must not weigh the evidence or determine the truth of the matter, but determine only whether there is a genuine issue for trial. Abdul-Jabbar v. General Motors Corp., 85 F.3d 407, 410 (9th Cir.1996). Summary judgment is not proper if material disputed factual issues exist for trial. Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir.1995), cert. denied, --- U.S. ----, 116 S.Ct. 1261, 134 L.Ed.2d 209 (1996).
 
 II. OTCA Notice Requirement
 
 15
 The Oregon Tort Claims Act provides an exclusive remedy for pursuing a tort claim against a public body. Or.Rev.Stat. § 30.260-.300. The OTCA requires a minor plaintiff to provide notice of claim within 270 days after the alleged injury.[2] Or.Rev.Stat. § 30.275. The notice period begins when the cause of action accrues for purposes of the statute of limitations. Adams v. Oregon State Police, 289 Or. 233, 611 P.2d 1153, 1156 (1980). Oregon applies the "discovery rule" to determine when a cause of action accrues. See Gaston v. Parsons, 318 Or. 247, 864 P.2d 1319, 1322 (1994).[3] Accordingly, the notice period begins to run "when the plaintiff knows, or in the exercise of reasonable care should have known, facts which would make a reasonable person aware of a substantial possibility that [a tort action] exists." Gaston, 864 P.2d at 1324. The burden is on the plaintiff to prove that notice of claim was timely. Or.Rev.Stat. § 30.275(7). A plaintiff may satisfy the notice requirement by "formal notice," "actual notice," or commencement of an action by or on behalf of the claimant. Or.Rev.Stat. § 30.275(3). The Plumeaus argue that they provided adequate and timely actual and formal notice to the School District and accordingly the district court erred in dismissing their state law claims.
 
 A. Actual Notice
 
 16
 The Plumeaus contend that they provided timely actual notice under the OTCA because they informed the "investigatory agents" of the School District about the abuse within 270 days after it was discovered. Under the OTCA, a defendant is deemed to have received "actual notice" when:
 
 
 17
 any person responsible for administering claims on behalf of the public body acquires actual knowledge of the time, place and circumstances giving rise to the claim, where the communication is such that a reasonable person would conclude that a particular person intends to assert a claim against the public body or an officer, employee or agent of the public body. A person responsible for administering claims on behalf of a public body is one who, as an officer, employee or agent of a public body or as an employee or agent of an insurance carrier insuring the public body ... engages in investigation, negotiation, adjustment or defense of claims ... or in furnishing or accepting forms for claimants to provide claim information, or in supervising any of those activities.
 
 
 18
 Or.Rev.Stat. § 30.275(6).
 
 
 19
 The Plumeaus argue that the CSD, the MPD, and the Yamhill County District Attorney were "investigatory agents" of the School District within the meaning of the OTCA notice provision because the School District delegated responsibility for the investigation of Amanda's abuse claims to these agencies.
 
 
 20
 Although the CSD, the MPD, and the Yamhill County District Attorney were all involved in investigating the allegations that Moore abused Amanda, the investigations were in aid of potential criminal charges against Moore, not potential tort claims against the School District. Notice must be provided to the person responsible for investigating tort claims brought against the agency. McCabe v. State of Oregon, 314 Or. 605, 841 P.2d 635, 638 (1992). None of these agencies was designated by statute to receive notice of tort claims for the School District, nor were they acting on behalf of the School District. The OTCA notice requirement is to provide notice to public bodies of potential tort actions against them. Holding a notice to other public entities to be sufficient would defeat that purpose. The information the Plumeaus provided to the law enforcement agencies does not satisfy the OTCA "actual notice" requirement.
 
 B. Formal Notice
 
 21
 The Plumeaus argue in the alternative that the May 11, 1994 letter from their attorney to the attorney for the School District satisfied the OTCA requirement of formal notice. They contend that factual issues remain regarding whether the letter was timely. The magistrate judge dismissed all of the Plumeaus' claims under the OTCA, concluding that as a matter of law the formal notice was untimely.
 
 
 22
 "Formal notice" entails:
 
 
 23
 [A] written communication from a claimant or representative of a claimant containing:
 
 
 24
 (a) A statement that a claim for damages is or will be asserted against the public body or an officer, employee or agent of the public body;
 
 
 25
 (b) A description of the time, place and circumstances giving rise to the claim, so far as known to the claimant; and
 
 
 26
 (c) The name of the claimant and the mailing address to which correspondence concerning the claim may be sent.
 
 
 27
 [In addition] formal notice of claim shall be given by mail or personal delivery.... If the claim is against a local public body ... to the public body at its principal administrative office, to any member of the governing body of the public body, or to an attorney designated by the governing body as its general counsel.
 
 
 28
 Or.Rev.Stat. § 30.275(4)-(5).
 
 
 29
 The Plumeaus' first cause of action alleges that the School District is vicariously liable in tort under state law for Moore's abuse of Amanda because the abuse took place within the scope of Moore's employment as a school janitor. It is undisputed that on May 29, 1992 the Plumeaus knew that Moore had sexually abused Amanda. Because the May 11, 1994 letter was sent to the School District more than 270 days after the Plumeaus knew of the abuse, the letter is untimely under the OTCA.
 
 
 30
 The Plumeaus' second cause of action alleges that the School District is directly liable for its own negligence in failing properly to supervise and train Moore and in failing to prevent Moore from sexually abusing Amanda. The Plumeaus argue that because they only discovered that the School District may possibly have been responsible for Moore's actions at the sentencing hearing on September 9, 1993, the May 11, 1994 letter fell within the requisite 270 days after they discovered the alleged injury. The School District argues, and the magistrate agreed, that the Plumeaus should have known that the School District was potentially liable for Amanda's abuse long before the Victim's Assistance Worker relayed to them her theory of the case.
 
 
 31
 A plaintiff has a duty to use due diligence in an effort to discover the party responsible for her injury. Georgeson v. State of Oregon, 75 Or.App. 213, 706 P.2d 570, 571 (1985). The Plumeaus knew the abuse took place during school hours and on school property and that the abuser was a school district employee. We agree with the district court that these facts were sufficient to apprise the Plumeaus of their potential claims against the district for failure to supervise Moore.
 
 
 32
 III. Municipal Liability Under 42 U.S.C. § 1983
 
 
 33
 The Plumeaus' third cause of action alleges a claim against the School District for violating Amanda's federally protected rights under the Due Process Clause of the Fifth and Fourteenth Amendments.
 
 A. Applicable Statute of Limitations
 
 34
 Because 42 U.S.C. § 1983 does not provide a statute of limitations, the limitations period for commencement of § 1983 actions must be borrowed from state law. We have held that § 1983 claims are to be characterized as personal injury actions for statute of limitations purposes. Davis v. Harvey, 789 F.2d 1332, 1333 (9th Cir.1986). Oregon's general tort statute provides a 2-year statute of limitations. Or.Rev.Stat. § 12.110(1). The district court in this case apparently assumed a timely filing. We agree, since the date of discovery was May 29, 1992, shortly following Amanda's attempted suicide. The action was filed on May 20, 1994.
 
 B. Requirements for Municipal Liability
 
 35
 The district court analyzed the Plumeaus' claims under the various theories of § 1983 municipal liability. Plumeau, 907 F.Supp. at 1435-46. To impose municipal liability under § 1983 for a violation of constitutional rights plaintiff must show: "(1) that [the plaintiff] possessed a constitutional right of which [s]he was deprived; (2) that the municipality had a policy; (3) that this policy 'amounts to deliberate indifference' to the plaintiff's constitutional right; and, (4) that the policy is the 'moving force behind the constitutional violation.' " Oviatt By and Through Waugh v. Pearce, 954 F.2d 1470, 1474 (9th Cir.1992) (quoting City of Canton v. Harris, 489 U.S. 378, 388-89, 109 S.Ct. 1197, 1204-05, 103 L.Ed.2d 412 (1989)).
 
 
 36
 Amanda had a constitutional right to be free from state-imposed violations of bodily integrity. P.B. v. Koch, 96 F.3d 1298, 1303 (9th Cir.1996). This includes freedom from excessive physical abuse by school employees. Id. at 1302-03; Ingraham v. Wright, 430 U.S. 651, 674, 97 S.Ct. 1401, 1413, 51 L.Ed.2d 711 (1977) ("[W]here school authorities, acting under color of state law, deliberately decide to punish a child for misconduct by restraining the child and inflicting appreciable physical pain, we hold that Fourteenth Amendment liberty interests are implicated."). Although this court has never explicitly stated that this liberty interest includes the right to be free from sexual abuse by school employees, a student's liberty interest in bodily integrity logically encompasses such freedom.
 
 
 37
 In considering whether substantive due process has been violated, this court has considered the following factors:
 
 
 38
 the need for the governmental action in question, the relationship between the need and the action, the extent of harm inflicted, and whether the action was taken in good faith or for the purpose of causing harm.
 
 
 39
 Koch, 96 F.3d at 1304 (quotation omitted). Each of these factors weighs heavily in favor of the conclusion that public school children have a constitutionally protected right not to be sexually abused by school employees at school. No governmental need could justify such conduct. See Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 727 (3d Cir.1989) ("a teacher's sexual molestation of a student could not possibly be deemed an acceptable practice"). The extent of harm inflicted by sexual abuse is immeasurable. And, in contrast to corporal punishment, sexual abuse is never inflicted in "good faith." Thus, we agree with the other circuits that have considered this issue: the Constitution protects a child's right to be free from sexual abuse by school employees while attending public school. See Doe v. Taylor Independent Sch. Dist., 15 F.3d 443, 451 (5th Cir.1994) (en banc) ("If the Constitution protects a schoolchild against being tied to a chair or against arbitrary paddlings, then surely the Constitution protects a school child from physical sexual abuse ... by a public schoolteacher."), cert. denied, 513 U.S. 815, 115 S.Ct. 70, 130 L.Ed.2d 25 (1995); D.T. By M.T. v. Independent Sch. Dist. No. 16, 894 F.2d 1176 (10th Cir.1990); Stoneking, 882 F.2d at 727 (holding that student's right to be free from sexual molestation is clearly established). The Plumeaus provided ample evidence that Amanda was deprived of this right.
 
 
 40
 However, after reviewing the entire record, and viewing the evidence as we must in the light most favorable to the Plumeaus, we agree with the district court that the Plumeaus have failed to raise a genuine issue of material fact as to § 1983 municipal liability in so far as their claims were based upon: (i) a custom or practice of ignoring complaints; (ii) unconstitutional actions taken by those with policy-making authority; or, (iii) an affirmative duty to protect.
 
 
 41
 The district court also concluded that the Plumeaus did not submit evidence, sufficient to survive a motion for summary judgment, to support their claim that the School District was deliberately indifferent to the need to provide training in identifying the signs of child sexual abuse.[4] Because the Plumeaus have not argued failure to train on appeal and, indeed, reject the theory as one upon which they rely, this court cannot address that issue. See Miller v. Fairchild Indus., Inc., 797 F.2d 727, 738 (9th Cir.1986) (holding that the court of appeals will not consider matters not specifically and distinctively argued in brief).
 
 IV. Denial of Leave to Amend Complaint
 
 42
 The Plumeaus appeal the magistrate's denial of what they style a motion to amend their complaint in response to the School District's municipal liability arguments. The Plumeaus sent a letter to the magistrate requesting that the court strike certain of the School District's arguments from the record because they had not been afforded sufficient opportunity to respond. The magistrate did not rule on this "motion."[5] Leave to amend is generally within the discretion of the district court. Nelson v. Pima Community College, 83 F.3d 1075, 1079 (9th Cir.1996). However, a denial of leave to amend after a responsive pleading has been filed is "strictly" reviewed in light of the strong policy permitting amendment. Pierce v. Multnomah County, 76 F.3d 1032, 1043 (9th Cir.), cert. denied, --- U.S. ----, 117 S.Ct. 506, 136 L.Ed.2d 397 (1996).
 
 
 43
 The magistrate judge did not abuse her discretion. First, in all likelihood the magistrate judge did not construe the letter as a motion for leave to amend. Nowhere does the letter request such leave. Indeed, the letter laments the fact that the Plumeaus "have no right to respond" to arguments newly raised by the defendant. Second, the letter discusses the issue of qualified immunity for state-law tort claims, not municipal liability under § 1983. Thus, even if we accept the Plumeaus' argument that their letter to the court was a motion to amend the complaint, it was not an abuse of discretion for the magistrate judge to deny that motion because qualified immunity is not an issue in this case and any such amendment would have been futile. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 339 (9th Cir.1996) (denial of a leave to amend is not an abuse of discretion where further amendment would be futile).
 
 CONCLUSION
 
 44
 We affirm the dismissal of the Plumeaus' first two causes of action alleging state law tort claims. The OTCA notice was untimely. We affirm the grant of summary judgment to the School District on the Plumeaus' § 1983 claims (as to some on the merits, but as to the failure to train issue, because it was waived on appeal).
 
 
 45
 AFFIRMED.
 
 
 
 *
 Honorable William W Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation
 
 
 [1]
 The janitor, Adrian Moore, filed Chapter 13 bankruptcy and all proceedings against him have been stayed. See 11 U.S.C. § 362
 
 
 [2]
 The normal notice period is 180 days, but there is a 90-day extension for minors. Or.Rev.Stat. § 30.275(2). The Oregon Supreme Court has specifically held that the notice period for a minor is not tolled until the appointment of a guardian ad litem. Perez v. Bay Area Hosp., 315 Or. 474, 846 P.2d 405, 409 (1993)
 
 
 [3]
 During oral argument counsel for the School District asserted that in Cooksey v. Portland Public Sch. Dist., 143 Or.App. 527, 923 P.2d 1328 (1996), the Oregon Court of Appeals held that the discovery rule does not apply in OTCA cases. This is a bald misstatement of the holding in Cooksey. That case stands for the unrelated proposition that the limitations period is not tolled pending the appointment of a guardian ad litem for the minor plaintiff
 
 
 [4]
 A municipality's failure adequately to train an employee can be an unconstitutional "policy" for purposes of § 1983 liability. City of Canton v. Harris, 489 U.S. 378, 387, 109 S.Ct. 1197, 1203, 103 L.Ed.2d 412 (1989). To be actionable under § 1983, a municipality's failure to train must amount to "deliberate indifference" to the rights of others. Id. at 387, 109 S.Ct. at 1203. For liability to attach, the need for training must be obvious and violation of constitutional rights must be a highly predictable consequence. Board of County Commissioners of Bryan County v. Brown, --- U.S. ----, ----, 117 S.Ct. 1382, 1391, 137 L.Ed.2d 626 (1997); see also Thelma D. v. Board of Educ., 934 F.2d 929, 934-35 (8th Cir.1991) (stating that notice to a school board may be implied "where failure to train ... employees is so likely to result in a violation of constitutional rights that the need for training is patently obvious.")
 
 
 [5]
 The School District argues both in its brief and in a separate motion to this court that because there is no formal Motion to Amend in the Record and no order denying a Motion to Amend, this court lacks jurisdiction over this issue on appeal. The School District is incorrect. A failure to rule on a motion is appealable
 The School District also erroneously argues that because the Plumeaus failed to mention specifically this issue in their Notice of Appeal, the appeal of the issue is untimely and that we lack jurisdiction. Even where the Notice of Appeal fails to specify the specific orders appealed from, the intent to appeal the specific order is inferred if the appellee is not prejudiced or misled. Simpson v. Lear Astronics Corp., 77 F.3d 1170, 1176 (9th Cir.1996). We conclude that the School District has been neither prejudiced nor misled.