Argued and submitted December 2, 2010, reversed and remanded
July 27, 2011

Diane L. SCOTT,
*Plaintiff-Appellant,*

*v.*

JACKSON COUNTY,
*Defendant-Respondent.*

Jackson County Circuit Court
091455E2; A144157

260 P3d 744

G. Jefferson Campbell, Jr., argued the cause for appellant.
With him on the briefs was G. Jefferson Campbell, Jr., P.C.

Michael Jewett argued the cause and filed the brief for
respondent.

Before Schuman, Presiding Judge, and Wollheim, Judge,
and Rosenblum, Senior Judge.

WOLLHEIM, J.

**WOLLHEIM, J.**

Plaintiff conducted a rabbit breeding operation on property located in Jackson County. In 2001, plaintiff pleaded no contest to animal abuse, and, in conjunction with the criminal proceedings, the county seized her rabbits. The county housed, treated, and fed the rabbits before declaring them abandoned, at which point the county gave them away. In 2003, plaintiff filed an action against the county in federal court, alleging civil rights violations and common-law tort claims. After the Ninth Circuit affirmed summary judgment as to some of plaintiff's claims, she filed a complaint in state court based on the same factual allegations. The trial court granted the county's motion for summary judgment based on issue preclusion, and plaintiff now appeals that judgment. We reverse and remand.

This much is undisputed. In May 2001, animal control officers investigated a complaint about the condition of plaintiff's rabbits. The officers discovered and seized four dead rabbits, and plaintiff was charged with animal neglect. In August 2001, county officials executed a search warrant on plaintiff's property and seized approximately 300 rabbits; they left some 300 additional rabbits on the property. Plaintiff subsequently pleaded no contest to one count of animal neglect, and she was sentenced to probation. The sentence, however, also prohibited plaintiff from possessing animals and ordered that she forfeit her remaining rabbits.

The county seized the remaining rabbits immediately after plaintiff's sentence was pronounced. Two weeks later, the sentencing judge reconsidered the conditions of her order. The judge deleted the forfeiture provision but left in place the condition that plaintiff not possess any animals. Plaintiff thereafter sought the return of the rabbits that were in the county's custody, but the county refused to return them (ostensibly because plaintiff still could not herself *possess* them). Instead, the county cared for and treated the rabbits, declared them abandoned under county law, and gave away those that had survived.

On July 22, 2003, plaintiff filed an action in federal court, the specifics of which will be discussed later. In short,

plaintiff alleged that the county had unlawfully entered her property, unlawfully seized her rabbits and other property, and had then killed, lost, failed to properly treat and care for, or given away the seized rabbits. Her claims ranged from civil rights violations (taking of property; denial of substantive due process; illegal search and seizure) to state common-law claims of trespass to land, trespass to chattels, and conversion. The district court granted the county's motion for summary judgment on all claims.

Plaintiff appealed that judgment. The Ninth Circuit affirmed with respect to plaintiff's federal claims but reversed in part the district court's ruling regarding the state law tort claims. *Scott v. Jackson County*, 297 Fed Appx 623, 2008 WL 4706301 (9th Cir 2008). The case was remanded and, on remand, plaintiff moved to dismiss her complaint, asking the court to decline to exercise supplemental jurisdiction over her remaining state law tort claims. The court granted the motion and dismissed those common-law claims without prejudice.

Plaintiff then filed this action in Jackson County Circuit Court in April 2009. Her complaint, the first 101 paragraphs of which are taken verbatim from her federal complaint, realleged her tort claims: trespass to land, trespass to chattels, and conversion. At the same time, plaintiff moved for a change of venue to Klamath County, on the ground that she could not get a fair trial in Jackson County due to the coverage that her case had received in the press.

Four days after the complaint and change of venue motion were filed, plaintiff's attorney of record, G. Jefferson Campbell, Jr., began serving a 60-day suspension from the practice of law.[1] During that suspension period, plaintiff filed a reply to the county's response to the motion to change venue. The reply was signed by William S. Dames, as an attorney for G. Jefferson Campbell, Jr., P.C.

With the venue motion still pending, the county filed a motion for summary judgment. In that motion, the county argued that all three of plaintiff's claims were barred by issue

---

[1] The suspension was based on Campbell's conduct in a different case. *In re Campbell*, 345 Or 670, 202 P3d 871 (2009).

or claim preclusion, because the same claims and underlying facts had been previously litigated in plaintiff's federal case. In support of the motion, the county, through a declaration from its counsel, offered copies of the district court opinion granting summary judgment and the Ninth Circuit's memorandum disposition. The county's counsel further averred that he had reviewed plaintiff's complaints in both federal and state court and that "[h]er federal complaint contained 105 paragraphs of preliminary factual allegations," all but four of which were included in her state complaint as a "verbatim repetition of the federal allegations."

The following day, the trial judge assigned to the case, Judge Arnold, denied plaintiff's venue motion. In his order, Judge Arnold stated that "[n]one of [plaintiff's] reasons constitutes justification for granting the motion." He then went on to explain that he had not considered plaintiff's reply brief on the motion because he believed that, notwithstanding Dames's signature on the brief, Campbell had actually written it during his suspension and was thereby engaged in the unauthorized practice of law. Judge Arnold simultaneously sent a letter to the Oregon State Bar detailing his suspicion that Campbell was engaged in the unauthorized practice of law. (The Bar later investigated the accusation and found insufficient evidence that Campbell—as opposed to his paralegal—had drafted the brief for Dames's review.)

Two months after the venue motion was denied, on the morning of July 13, 2009—the day scheduled for a hearing before Judge Arnold on the county's summary judgment motion—plaintiff filed a motion to disqualify the judge and to have the case reassigned to another judge.[2] Later that day, Judge Arnold commenced the summary judgment hearing by stating, "A motion was filed today to disqualify me. That motion is denied." The parties then argued their respective positions on summary judgment; nothing more was said of the motion to disqualify. The court ultimately granted defendant's motion for summary judgment, explaining:

---

[2] Plaintiff further requested that the action not be assigned to one of three other Jackson County judges, each of whom had previously been involved in criminal or civil forfeiture proceedings involving plaintiff.

"It is for this Court to determine whether or not issues remain in this case to be decided after the 9th Circuit's order.

"Defendant's motion for summary judgment analyzes on a claim by claim basis how the opinion of the 9th Circuit, in affirming parts of the District Court's opinion has decided the issues presented in plaintiff's 56 page, 120 paragraph complaint.

"In attempting to argue against the motion for summary judgment, plaintiff does not point to any of her 120 paragraphs of allegations which have not been decided. Rather, she paints with a broad brush that something remains. This Court has reviewed the entire complaint for undecided issues and has found none.

"The Court finds that the motion for summary judgment is well taken, that all of the issues raised in plaintiff's complaint have been decided adversely to plaintiff and grants the motion. * * *"

The court entered judgment accordingly, and plaintiff now appeals.

Plaintiff advances two assignments of error. In her first assignment, she contends that her state common-law claims survived the federal court action and that the court therefore erred in granting summary judgment. In her second assignment, she contends that Judge Arnold erred in ruling on a motion to disqualify when he was the very subject of the motion. We address her assignments in that order.

As previously set out, the trial court granted the county's motion for summary judgment on the ground that "all of the issues raised in plaintiff's complaint have been decided adversely to plaintiff" in an earlier federal action. It is therefore necessary to discuss the pleadings and procedural history of that earlier action in some detail. Plaintiff's federal complaint alleged five separate claims for relief against the county and its actors, four of which are relevant here.[3] Her first claim was brought under 42 USC section

_____

[3] Plaintiff also alleged claims against a private veterinarian and a claim for "treble damages for violation of Oregon Property Protection Act of 2000, Article XV, Sec. 10, Constitution of the State of Oregon." Those aspects of the federal complaint are not germane to this appeal.

1983 for "money damages to redress the deprivation by the Defendants of the civil rights secured to the Plaintiff." Among those alleged civil rights violations were deprivations of her rights to due process, to be free of unreasonable searches and seizures, and to not have her property taken without just compensation.

Plaintiff's second claim for relief was for "trespass to real property" and was based on the theory that, "[b]etween May 8, 2001 and August 1, 2001, the Defendants, as alleged, made continual and repeated entries onto Plaintiff's property without the Plaintiff's consent or knowledge, and without any search warrant or other legal justification or excuse." Her third claim was for trespass to chattels. She alleged that she was the owner of rabbits, other animals, and various other items of personal property that were seized or harmed by the county. She further alleged that

> "[d]efendants, by and through the acts alleged, intentionally interfered with the Plaintiff's right to possession of her personal property and chattel by entering onto the Plaintiff's property and seizing the same, as alleged, all without Plaintiff's consent and without any lawful authority and excuse, and thereby committed a trespass as to such items of personal property and chattel."

Plaintiff's fourth claim was for conversion of plaintiff's "rabbits and personal property." She alleged that the county and its agents had "intentionally converted the Plaintiff's rabbits and personal property to their own use, or the use of others, and deprived the Plaintiff of her right to ownership and possession thereof," and that she "did not consent to the conversion of her personal property and the acts and conduct of the Defendants, as alleged, were without legal justification and excuse."

The county and its agents moved for summary judgment on all claims in the federal complaint, arguing, among other contentions, that the county's agents had qualified immunity and that plaintiff had failed to give proper notice of her state law claims as required by the Oregon Tort Claims Act (OTCA). The district court began its analysis by addressing the section 1983 claim. The court explained that it would

take a two-step approach to the question whether the individual county defendants had qualified immunity: First, "the court must determine whether defendants violated plaintiff's constitutional rights"; second, assuming that there was a violation, "the court proceeds to determine whether that right was 'clearly established' such that 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.' " *Scott v. Jackson County*, 403 F Supp 2d 999, 1005 (D Or 2005) (quoting *Saucier v. Katz*, 533 US 194, 201-02, 121 S Ct 2151, 150 L Ed 2d 272 (2001)). The court then applied that two-step approach to the alleged constitutional violations underlying the section 1983 claim and, as to each allegation, concluded either that no violation occurred or that, even if it did, the county agents reasonably believed that their actions were lawful.

With respect to the common-law claims for trespass to land, trespass to chattels, and conversion, the district court agreed with the county's contention that plaintiff failed to give the requisite tort claim notice under Oregon law. The court explained that, under the OTCA, in order to bring an action against a public body or its agents, the plaintiff must give notice to the public body within 180 days of the alleged injury or loss. *See* ORS 30.275(1), (2)(b); ORS 30.275(3)(a), (b) (notice may be "formal" or "actual"). The only notice—a "cryptic" reference by plaintiff's attorney, during a criminal proceeding, to a claim against the county—was, in the district court's view, insufficient as a matter of law. Thus, the court granted defendant's motion for summary judgment as to each of the state tort claims.

Plaintiff appealed the district court's grant of summary judgment. The Ninth Circuit, in an unpublished memorandum opinion, affirmed the judgment in some respects but reversed in others. *Scott*, 297 Fed Appx 623. Initially, the Ninth Circuit held that the district court "erred in wholly ignoring" plaintiff's complaint as evidence at the summary judgment stage; "[a] verified complaint may be treated as an affidavit to the extent that the complaint is based on personal knowledge and sets forth facts admissible in evidence and to which the affiant is competent to testify." *Id.* at 624 (internal quotation marks omitted).

The Ninth Circuit then turned to plaintiff's section 1983 claim, and her contention that, "between May 8, 2001, and August 1, 2001, the County engaged in several warrantless searches and seizures of her property in violation of the Fourth Amendment." *Id.* at 625. The court held that, contrary to the district court's approach, there was no need to reach the merits of plaintiff's contentions. The "statute of limitations for § 1983 actions," it explained, " 'must be borrowed from state law.' " *Id.* (quoting *Plumeau v. Sch. Dist. #40 County of Yamhill*, 130 F3d 432, 438 (9th Cir 1997)). "Here, the applicable period is two years. [ORS] 12.110(1);[4] *see also Plumeau*, 130 F3d at 438." 297 Fed Appx at 625. The Ninth Circuit then concluded, without extended discussion, that plaintiff's complaint "was filed on July 22, 2003. Any constitutional claims arising prior to July 22, 2001, are time barred." *Id.* In a footnote, the court dealt with a later, warrantless entry:

> "The record indicates that [an animal control officer] entered [plaintiff's] property on July 23, 2001, without a warrant. The conditions of [plaintiff's] release following arraignment on May 18, 2001, required that she cooperate with Animal Control officers. [The officer's] entry was permissible under such requirement."

*Id.* at 625 n 4.

The Ninth Circuit next considered plaintiff's allegations that the county and its agents had violated section 1983 in their execution of a search warrant on August 1, 2001, and by seizing her rabbits on November 1, 2001, based on the forfeiture provision in the first criminal judgment. The court rejected both arguments. As to the execution of the search warrant, the court explained:

> "When considering '[w]hether a search exceeds the scope of a search warrant,' we must engage in 'an objective assessment of the circumstances surrounding the issuance of the

---

[4] ORS 12.110(1) provides:

"An action for assault, battery, false imprisonment, or for any injury to the person or rights of another, not arising on contract, and not especially enumerated in this chapter, shall be commenced within two years; provided, that in an action at law based upon fraud or deceit, the limitation shall be deemed to commence only from the discovery of the fraud or deceit."

warrant, the contents of the search warrant, and the circumstances of the search.' *United States v. Hitchcock*, 286 F3d 1064, 1071 (9th Cir), *amended by* 298 F3d 1021 (9th Cir 2002). Here, we agree with the district court that the officers properly interpreted the language of the warrant. *See Scott*, 403 F Supp 2d at 1008. Absent a violation of a 'clearly established [constitutional] standard[ ],' we need not discuss qualified immunity. *Saucier v. Katz*, 533 US 194, 208, 121 S Ct 2151, 150 L Ed 2d 272 (2001)."

297 Fed Appx at 625 (alterations in original). The Ninth Circuit's treatment of the forfeiture provision, based on qualified immunity, was equally brief:

"[Plaintiff] also challenges the November 1, 2001, seizure of her rabbits under the forfeiture provision of the initial state trial court judgment. We agree with the district court that the County officials are entitled to qualified immunity *because they reasonably believed the seizure was lawful.*"

*Id.* (emphasis added).

Having affirmed the district court's judgment as to plaintiff's section 1983 claim,[5] the Ninth Circuit turned to her state law claims, which the district court had dismissed for inadequate notice under the OTCA. The court disagreed with the district court's ruling, concluding that the oral notice by plaintiff's counsel at a criminal hearing on August 28, 2001, was sufficient "to put Jackson County on actual notice as to the circumstances upon which [plaintiff] intended to bring her lawsuit." 297 Fed Appx at 629. Moreover, there was evidence that plaintiff had given " 'formal' notice of state tort actions on April 18, 2002, in a letter she personally delivered to Jackson County Animal Control's office. Such a letter would be effective for any torts that accrued on or after October 22, 2001." *Id.* Thus, the court held:

"It follows that the only claims for which the County did not receive notice were those claims which accrued between

---

[5] The Ninth Circuit also rejected plaintiff's contentions that her rights under the Takings Clause had been violated, a matter discussed later in this opinion. The court likewise affirmed the dismissal of plaintiff's claims based on the Oregon Property Protection Act, but its discussion and disposition of that claim does not bear on our analysis here.

August 28, 2001, and October 22, 2001. *Therefore, the district court's decision to dismiss [plaintiff's] state law tort claims on summary judgment must be reversed, except for those claims which accrued between August 28, 2001, and October 22, 2001.*"

297 Fed Appx at 626 (emphasis added). Accordingly, the case was remanded to the district court for further proceedings on the state law tort claims that accrued outside that window.

Once the case was remanded, with the federal claims no longer in the action, plaintiff filed a motion requesting that the district court decline to exercise its supplemental jurisdiction over what was left of her state tort claims. Jackson County did not oppose that motion, and the district court granted it, dismissing the tort claims without prejudice. Plaintiff then filed the identical common-law claims in state court.

The dispute on appeal is whether plaintiff's refiled tort claims are precluded by the federal action—that is, whether, in light of the issues that were litigated and decided in that earlier action, there is anything left of her tort claims. "Issue preclusion arises in a subsequent proceeding when an issue of ultimate fact has been determined by a valid and final determination in a prior proceeding." *Nelson v. Emerald People's Utility Dist.*, 318 Or 99, 103, 862 P2d 1293 (1993). Five requirements are essential to the application of issue preclusion: (1) "[t]he issue in the two proceedings is identical"; (2) the issue actually was "litigated and was essential to a final decision on the merits in the prior proceeding"; (3) "[t]he party sought to be precluded has had a full and fair opportunity to be heard on that issue"; (4) "[t]he party sought to be precluded was a party or was in privity with a party to the prior proceeding"; and (5) "[t]he prior proceeding was the type of proceeding to which this court will give preclusive effect." *Id.* at 104. At the summary judgment stage, issue preclusion applies as a matter of law only if it can be conclusively determined from the record that "all the *Nelson* requirements [are] satisfied." *Barackman v. Anderson*, 338 Or 365, 372, 109 P3d 370 (2005).[6]

---

[6] *Cf. Barackman*, 338 Or at 372 ("[A]s previously noted, not all of the *Nelson* requirements can be determined on the record before us. It follows that the Court

Our first task, then, is to sort through the potentially overlapping issues with regard to the federal action and each of plaintiff's tort claims. We begin with the claim for trespass to land, in which plaintiff alleges unlawful entries onto her property that occurred "[b]etween May 8, 2001 and July 23, 2001"—a window for which the Ninth Circuit determined that her notice under the OTCA was sufficient. The county argues that, despite the Ninth Circuit's reversal of summary judgment on notice grounds, a separate issue was decided in the memorandum opinion—albeit in the context of her section 1983 claim—that ultimately bars her trespass claim: specifically, that her trespass claim accrued more than two years before she filed her complaint. *See* ORS 30.275(9) (action arising from act or omission of a public body or its agents "shall be commenced within two years after the alleged loss or injury").

Plaintiff's section 1983 claim, like her present trespass claim, was based on the county's "warrantless entries onto her property from May through July of 2001." 403 F Supp 2d at 1006. The Ninth Circuit held, as set out above, that plaintiff's section 1983 claim was untimely under a "borrowed" two-year statute of limitations, ORS 12.110(1).[7] According to the county, the OTCA, which applies to plaintiff's trespass claim, likewise has a two-year statute of limitations that is equivalent to ORS 12.110(1), and the Ninth Circuit's holding should therefore preclude plaintiff from arguing that her trespass claim is now timely. Plaintiff, meanwhile, argues that she *discovered* her claims within two years of filing them, that the Ninth Circuit made no mention of any discovery rule, and that "[t]he nature of the interests harmed for a civil rights violation under 42 USC section 1983 versus that for trespass entries on real property are entirely

---

of Appeals had no legal basis for ruling as a matter of law that issue preclusion *did* apply in this case." (Emphasis in original.)).

[7] Under Oregon law, actions for trespass to land are governed by a six-year statute of limitations under ORS 12.080(3). However, because section 1983 actions are for injuries to the person, federal law borrows the two-year statute of limitations in ORS 12.110(1). *Plumeau*, 130 F3d at 438 ("We have held that § 1983 claims are to be characterized as personal injury actions for statute of limitations purposes. *Davis v. Harvey*, 789 F2d 1332, 1333 (9th Cir 1986). Oregon's general tort statute provides a 2-year statute of limitations. [ORS] 12.110(1).").

different * * * which gives rise to entirely different statute[s] of limitations for each type of claim and injury."

The parties' arguments pertain to the first three *Nelson* factors: the identity of the issue in the state and federal actions, whether the issue was actually litigated and essential to a final decision, and whether plaintiff had a sufficient opportunity to litigate it in federal court.[8] We conclude that, regardless of whether the first two factors are met on this summary judgment record, the third is not.

The two-year statute of limitations that applies to plaintiff's trespass claim may well operate the same way as the two-year statute of limitations for her section 1983 claims. *Compare Adams v. Oregon State Police*, 289 Or 233, 239, 611 P2d 1153 (1980) (two-year statute of limitations period under OTCA "does not commence to run until plaintiff has a reasonable opportunity to discover his injury and the identity of the party responsible for that injury"), *with Johnson v. California*, 207 F3d 650, 653 (9th Cir 2000) ("Under federal law, a claim accrues when the plaintiff knows, or should know, of the injury which is the basis of the cause of action."). In fact, in the context of a section 1983 action, the Oregon Supreme Court has simply applied Oregon's "discovery rule" of accrual and observed that "Oregon law mirrors the generally applicable common-law discovery rule." *T. R. v. Boy Scouts of America*, 344 Or 282, 291, 181 P3d 758, *cert den*, 555 US 825, 129 S Ct 146 (2008) ("As we have noted, the accrual rule that applies to determine when plaintiff's section 1983 claim accrued is a 'discovery' accrual rule.").

Assuming that to be the case, however, the evidence in the record does not demonstrate that plaintiff had an adequate opportunity to litigate any discovery issues with respect to the statute of limitations for her section 1983 claim. The summary judgment record in this action contains the district court opinion and the Ninth Circuit opinion; it does not include the county's motion for summary judgment in the federal action. And, from the text of those two opinions,

---

[8] Plaintiff does not dispute—nor could she—that she was a party in the federal action or that the federal action "was the type of proceeding to which this court will give preclusive effect."

there is no indication that the county actually raised the statute of limitations issue in its motion for summary judgment on the section 1983 claim. The district court opinion does not make any mention of a statute of limitations argument by the county, nor does the Ninth Circuit's opinion indicate that the county moved for summary judgment on that ground. Rather, the Ninth Circuit's opinion appears to address the statute of limitations question *sua sponte*, as an alternative basis to affirm the district court. In fact, the Ninth Circuit follows up its statute of limitations analysis with this citation: "*See Vernon v. City of L.A.*, 27 F3d 1385, 1391 (9th Cir 1994) ('[We] may affirm on any ground supported by the record.')." *Scott*, 297 Fed Appx at 625.

In sum, the record before us does not demonstrate that plaintiff had an adequate opportunity in federal court to litigate the timing of her discovery of the county's alleged trespass. The trial court therefore erred in granting the county's motion for summary judgment as to the claim for trespass to land.

Plaintiff's remaining claims are for trespass to chattels and conversion. Those claims arise out of the county's seizures of her property on August 1, 2001, and November 1, 2001, and the county's subsequent disposition of her property—claims for which the Ninth Circuit determined that plaintiff's tort claim notice was adequate. To briefly recap, county agents executed a search warrant and seized plaintiff's rabbits in August 2001. Plaintiff pleaded no contest to animal neglect and was sentenced on October 31, 2001. The sentence originally ordered the forfeiture of plaintiff's rabbits and, on November 1, the county seized plaintiff's remaining rabbits and other property. On plaintiff's motion, however, the judge reconsidered the forfeiture provision and, on November 20, 2001, issued an amended judgment that no longer included a forfeiture provision.[9]

According to the county, the Ninth Circuit and federal district court conclusively resolved two issues—that the seizures were "lawful" and that plaintiff "abandoned" her

---

[9] In the meantime, plaintiff had likewise asked this court to stay that provision of the original judgment; we granted the stay on November 30, 2001.

property—that preclude both tort claims. We conclude that neither "issue" is preclusive of her claims nor supports the trial court's grant of summary judgment against those claims.

The county initially contends that plaintiff's claims are barred because the Ninth Circuit determined that the county's employees acted "lawfully" in effecting the seizures. With respect to the November 1 seizure, the county contends that "[t]he Ninth Circuit focused more narrowly on qualified immunity, while [the district court] ruled more broadly that no civil rights violation occurred, but both courts said the same thing: *seizure of the rabbits on November 1 was lawful.*"

That, in our view, is not an accurate statement of the "issue" that was finally adjudicated by the Ninth Circuit. The Ninth Circuit concluded that, as to the "November 1, 2001, seizure of her rabbits under the forfeiture provision of the initial state trial court judgment," the district court had correctly ruled that "the County officials are entitled to qualified immunity because they *reasonably believed* the seizure was lawful." 297 Fed Appx at 625.

At the time of the Ninth Circuit's decision, questions of qualified immunity were decided under the rubric of *Saucier*, which called for a sequential inquiry:

"A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? This must be the initial inquiry. * * *

"If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity. On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established."

533 US at 201.[10] At that second stage, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that

_____

[10] Subsequently, the United States Supreme Court revisited "the *Saucier* two-step protocol" and, "[o]n reconsidering the procedure required in *Saucier* [concluded] that, while the sequence set forth there is often appropriate, it should no

his conduct was unlawful in the situation he confronted." *Id.* at 202.

In this case, the district court ruled, "[G]iven that plaintiff did not object to the forfeiture provision, defendants are entitled to qualified immunity, because they reasonably believed their actions on November 1, 2001 were lawful under the judgment of conviction." That is, the court ruled that, *even if* the seizure violated plaintiff's rights, it would not have been "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* That is the ground on which the Ninth Circuit affirmed the dismissal of plaintiff's section 1983 claim. *Scott*, 297 Fed Appx at 625. In other words, the Ninth Circuit did not decide whether the November 1 seizure was lawful; it decided only that the officers *reasonably believed* that to be the case.[11]

An actor's "reasonable belief" that conduct is lawful, although relevant to tort claims for conversion and trespass to chattels, is not itself dispositive. Oregon has adopted the definition of "conversion" set forth in *Restatement (Second) of Torts* § 222A (1965). *Mustola v. Toddy*, 253 Or 658, 664, 456 P2d 1004 (1969). That definition provides:

"(1)   Conversion is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel.

"(2)   In determining the seriousness of the interference and the justice of requiring the actor to pay the full value, the following factors are important:

"(a)   the extent and duration of the actor's exercise of dominion or control;

"(b)   the actor's intent to assert a right in fact inconsistent with the other's right of control;

"(c)   *the actor's good faith*;

___

longer be regarded as mandatory." *Pearson v. Callahan*, 555 US 223, 235-36, 129 S Ct 808, 172 L Ed 2d 565 (2009).

[11] The district court did state that the "seizure was lawful," 403 F Supp 2d 1008, but the Ninth Circuit did not affirm on that basis, instead referring to what the officers "reasonably believed." 297 Fed Appx at 625. *See* 244 Or App at 502-03 (explaining that Ninth Circuit decision is relevant judgment for issue preclusion).

"(d)   the extent and duration of the resulting interference with the other's right of control;

"(e)   the harm done to the chattel;

"(f)   the inconvenience and expense caused to the other."

*Restatement (Second) of Torts* § 222A (1965) (emphasis added). The elements of a claim for trespass to chattels are, for relevant purposes, the same; the only arguable differences are the extent of the interference and remedy. *See Mustola,* 253 Or at 664 n 4 ("There is a strong argument for abolishing the distinction between conversion and other types of interference, such as trespass."); *Morrow v. First Interstate Bank,* 118 Or App 164, 168, 847 P2d 411, *rev dismissed,* 317 Or 580 (1993) (trespass to chattels has been described as the "little brother of conversion").

The list of factors in the *Restatement* for determining "whether a conversion occurs is nonexclusive * * * and *no one factor is considered dispositive." Becker v. Pacific Forest Industries, Inc.,* 229 Or App 112, 116, 211 P3d 284 (2009). The latter is true of "good faith" as well. *See In re Martin,* 328 Or 177, 184-85, 970 P2d 638 (1998) ("An actor commits conversion if the actor mistakenly believes that he or she is acting legally with respect to the other person's property, *Hemstreet v. Spears,* 282 Or 439, 579 P2d 229 (1978)."). Thus, a prior determination that the county's officers acted with a "reasonable belief" in the lawfulness of their actions is not, by itself, automatically preclusive of a conversion or trespass to chattels claim.[12]

The county's arguments that plaintiff's claims are precluded by a prior determination of "abandonment" likewise fails. In both of her complaints—federal and state—

---

[12] We limit our discussion to the question whether the federal action decided facts pertaining to the elements of the torts themselves; the county does not raise, and we do not address, the applicability of any potential defenses, including immunity under the OTCA. *Cf. Dickens v. DeBolt,* 288 Or 3, 14-15, 602 P2d 246 (1979) (discussing OTCA immunity in context of state police officer who seized and then ate sturgeon that he believed to have been caught illegally; if the officer "ate most of the sturgeon and at that time was not acting within the course and scope of his employment, as the jury was entitled to find from the evidence of this case, he would then be subject to punitive damages on the same basis as any other person who commits an act of conversion") (emphasis omitted).

plaintiff alleged that, at various points after the August and November seizures, the county had unlawfully destroyed or given away the rabbits that were in its custody and had lost other property. In her federal complaint, she relied on those allegations as the basis for a section 1983 claim based on a deprivation of her rights under the Takings Clause of the Fifth Amendment. The district court, in granting summary judgment on the section 1983 claim, specifically addressed the allegations concerning the euthanasia and adoption of various rabbits:

> "Next, plaintiff alleges that the euthanasia and adoption of her rabbits in November 2001 constitutes an unlawful taking of her property without just compensation. However, the rabbits were placed or destroyed at that time as condition of forfeiture in a criminal judgment. *See Eversleigh v. United States*, 24 Cl Ct 357, 359 (Cl Ct 1991) (invalid forfeiture cannot be the foundation for a Fifth Amendment taking claim). Further, although Animal Control officers adopted out or euthanized some rabbits between November 1 and November 17, an amended judgment deleting the forfeiture provision was not issued until November 20, 2001. Plaintiff presents no evidence that Animal Control disposed of any rabbits after it obtained notice of the amended judgment or temporary stay of the forfeiture provision issued by the Oregon Court of Appeals.

> "*Further, I do not find that the subsequent adoption and/or euthanasia of the rabbits in June 2002 constitutes a 'taking.' After plaintiff's criminal judgment was amended to delete the forfeiture provisions, plaintiff failed to take action to provide another caretaker or alternative arrangements for the rabbits, either by selling or giving the rabbits away.* Notably, plaintiff did not appeal the probation condition that she not possess any animals. *Therefore, the County could not lawfully return the rabbits to plaintiff. After six months in limbo, Animal Control invoked Jackson County Code § 612.07(g) and deemed the animals abandoned.*

> "Section 612.07(g) provides:

> > " 'Any failure or refusal to pay fees, penalties, or costs as provided for in this Chapter after 10 days from the date notice is posted at the Animal Shelter, is deemed abandonment of the impounded animal and the Animal Shelter shall retain the right to dispose of the

animal as considered by the Director to be in the best interest of Jackson County.'

"* * * * *

"It is true that the adoption of rabbits in June 2002 arguably violated the stay of the forfeiture provision issued by the Oregon Court of Appeals on November 30, 2001, because it was intended to prevent the placement or destruction of the rabbits pursuant to the forfeiture provision. However, the forfeiture provision had long been deleted and it is arguable that the stay was moot. *Furthermore, the rabbits were not offered for adoption under the authority of the forfeiture provision; rather, Animal Control relied on § 612.07(g) of the Jackson County Code.*"

403 F Supp 2d at 1009 (emphasis added).

The Ninth Circuit affirmed the district court's grant of summary judgment, but on different grounds. It explained that "[t]he district court properly stated that claims of improper criminal forfeiture cannot be considered under the Fifth Amendment" and that "[t]he Takings Clause is implicated only when the taking in question is for a public use. Here, [plaintiff] never alleged that her property was taken or retained for any reason other than for law enforcement purposes." 297 Fed Appx at 625-26.

In its motion for summary judgment in state court, the county argued that plaintiff's conversion claim, to the extent that it was based on the county's disposition of the rabbits, was precluded by the *district court's* ruling.[13] The county explained that the district court "expressly found that disposition of the rabbits was done lawfully under a County code provision governing abandoned animals. *The Ninth Circuit affirmed on other grounds.* * * *. For the same reason there was no 'taking' there necessarily was no 'conversion' here." (Emphasis added.)

On appeal, the county continues to assert that the conversion claim is precluded because the district court "expressly found that the County had disposed of the rabbits

---

[13] Incidentally, plaintiff's claims also allege conversion and trespass to personal property other than the destroyed or adopted rabbits; the district court's takings determination does not address that other personal property, which allegedly included equipment and supplies that were seized. The county does not address plaintiff's allegations regarding that additional property.

lawfully under a County code provision." The problem with that argument, however, is that issue preclusion applies only to issues that were "essential to a final decision on the merits in the prior proceeding." *Nelson*, 318 Or at 104. The county concedes that the Ninth Circuit did not reach the district court's determination regarding the code provision, instead affirming on alternative grounds—namely, that the Takings Clause simply was not implicated by claims of improper criminal forfeiture. The county does not explain how, in that posture, the district court's determination was nevertheless "essential" to the final judgment dismissing plaintiff's section 1983 claim. Indeed, Oregon law is to the contrary. In *State v. Stanford*, 111 Or App 509, 513, 828 P2d 459 (1992), we held that the defendant was not precluded from relitigating issues that had been raised below in an earlier case but were not addressed in the previous appeal:

> "In our previous decision in this case, we expressly declined to consider the issue of whether defendant had violated the law, because it was unnecessary to do so to affirm the trial court. The issue was neither determined nor essential to the previous judgment. *When an appellate court refuses to consider an issue and affirms a judgment on a different ground, a party is not prevented from relitigating that issue. See Restatement (Second) Judgments* § 27, comment o at 263 (1982)."[14]

(Emphasis added.)

Thus, even assuming that the district court's ruling regarding the disposition of the rabbits somehow decided an issue that overlaps with the conversion claim, the county still has not demonstrated that the ruling was "essential" to the Ninth Circuit's decision—the final judgment here. For that reason, and the others stated above, we reverse the trial

---

[14] The comment to section 27 of *Restatement (Second) of Judgments* provides, in part:

> "If the judgment of the court of first instance was based on a determination of two issues, either of which standing independently would be sufficient to support the result, and the appellate court upholds * * * one of these determinations as sufficient and refuses to consider whether or not the other is sufficient and accordingly affirms the judgment, the judgment is conclusive as to the first determination."

court's grant of summary judgment on plaintiff's claims for trespass to chattels and conversion.[15]

We turn, then, to plaintiff's second assignment of error, in which she contends that Judge Arnold, the judge who ruled on the summary judgment motion, "erred by considering, ruling upon, and denying" plaintiff's motion to disqualify him. Plaintiff contends that, once Judge Arnold reported to the bar his belief that plaintiff's counsel was ghostwriting briefs during a suspension from the practice of law, the judge was required to recuse himself from the action because his accusations created the appearance of bias. The county, in response, argues that the motion was untimely, that it was too broad (in that it sought recusal of too many judges), and that plaintiff either invited Judge Arnold to rule on the motion himself or failed to preserve the alleged error in that regard.

Three critical aspects of the ruling on the motion to disqualify are murky on the record before us: (1) the basis for the trial court's denial of the motion—timeliness or merits or some combination; (2) whether plaintiff preserved the claim of error on appeal, specifically as to Judge Arnold deciding the motion himself; and (3) what, if anything, plaintiff would gain from our consideration of this assignment of error at this juncture. On the last point, the case will be remanded, at which time Judge Arnold may or may not be the assigned trial court judge. If Judge Arnold is assigned, plaintiff will have an opportunity to renew her motion to disqualify at that time, and the motion will be considered under the circumstances then existing—possibly by a different judge.[16] Accordingly, we decline to address the trial court's ruling on the motion to disqualify, which presents an issue that may or

---

[15] As to the August seizure, the Ninth Circuit concluded that the "officers properly interpreted the language of the warrant." 297 Fed Appx at 625. Even if plaintiff can no longer assert that the August seizure was unlawful, her trespass to chattels claims are not limited to that seizure and, for the reasons previously discussed, survive summary judgment.

[16] In fact, plaintiff's perceptions of Judge Arnold's impartiality—or appearance of impartiality—might have changed in the year plus since the initial motion to disqualify; the county notes, for instance, that plaintiff was successful before Judge Arnold on subsequent attorney fee issues.

may not arise on remand and that has not, to this point, demonstrably prejudiced plaintiff.[17]

Reversed and remanded.

---

[17] Plaintiff does not argue that Judge Arnold was or is actually biased toward her or that plaintiff was somehow prejudiced as to any other rulings in the case. Her arguments regarding the grant of summary judgment, which involved pure questions of law, make no mention of bias; nor does she contend that the ruling on the motion for change of venue (which is not at issue on appeal) was somehow tainted.